NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2814-17T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ENOC PIMENTEL, a/k/a
ENOCH PIMEANTEL,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 22, 2019**
>
> **APPELLATE DIVISION**

Argued November 4, 2019 – Decided November 22, 2019

Before Judges Sabatino, Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-06-0517.

Kevin G. Roe argued the cause for appellant.

Valeria Dominguez, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Valeria Dominguez, of counsel and on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

After a motor vehicle stop, the State charged defendant with, among other things, the fourth-degree criminal offense under N.J.S.A. 2C:40-26, which

prohibits driving with a license suspended due to a second or subsequent driving while intoxicated ("DWI") conviction. The statute prescribes a mandatory minimum jail sentence of 180 days.

Defendant moved to dismiss the indictment, arguing that N.J.S.A. 2C:40-26 is invalid under the United States and New Jersey State Constitutions. Specifically, he argued the statute violates constitutional principles disallowing cruel and unusual punishment, and also denies him and other similarly-situated motorists due process and equal protection. He separately argued the statute was intended to repose discretion in trial judges to withhold imposition of the 180-day jail term. The trial court rejected these constitutional challenges and defendant's interpretation of the statute.

For the reasons that follow, we concur with the trial court and likewise conclude that N.J.S.A. 2C:40-26 does not violate the constitutional principles invoked by defendant. We also reject defendant's interpretation of the statute, as it is contrary to settled precedent.

## I.

The factual background is largely undisputed.

On September 4, 2014, a Clifton police officer pulled over defendant Enoc Pimentel for driving his car without wearing a seatbelt. Defendant claimed he was on his way to pick up his child from school. According to representations

2

of his counsel, defendant's significant other ordinarily picks up his child, but was unavailable to do so that day.

Defendant initially told the officer who pulled him over that his name was that of another person. He presented the officer with a driver's license bearing that other person's name and photograph. Defendant eventually admitted the license he produced was not his, but rather belonged to a friend, and advised the officer of his correct name. The officer then discovered that defendant's driver's license was suspended.

Defendant was arrested and issued two motor vehicle summonses for violations of Title 39: (1) failure to wear a seatbelt, N.J.S.A. 39:3-76.2(f), and (2) driving with a suspended license, N.J.S.A. 39:3-40.

In June 2015, a Passaic County Grand Jury returned Indictment No. 15-06-0517, charging defendant with: (1) fourth-degree false reporting, N.J.S.A. 2C:28-4(a); (2) fourth-degree identity theft, N.J.S.A. 2C:21-17(a)(4); and (3) fourth-degree driving with a suspended license during a period of license suspension pursuant to a second or subsequent DWI, N.J.S.A. 2C:40-26(b).

Defendant's driving record is woefully non-exemplary. His driver's abstract reveals two prior DWI offenses. The first violation occurred on September 1, 2007, and the second violation occurred on May 5, 2008. Defendant also has two prior Title 39 violations for driving with a suspended

3

license. The first violation occurred on December 6, 2008, and the second occurred on May 20, 2009. Between 2008 and 2014, defendant's license has been suspended eight times for various offenses.

Defendant moved to dismiss the suspended license count of the indictment by challenging the constitutionality of N.J.S.A. 2C:40-26. He did not, however, challenge the sufficiency of this count on proof grounds.

Defendant made three separate arguments of unconstitutionality. First, he argued the six-month mandatory minimum sentence imposed by N.J.S.A. 2C:40-26(c) constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution. Second, he argued the statute violates equal protection principles under the Fourteenth Amendment and Article I, Paragraph 1 of the New Jersey Constitution. Third, he argued the statute violates federal and state constitutional principles of substantive due process.

As a separate non-constitutional point, defendant asserted the Legislature intended for courts to have the discretion to employ an alternative sentencing scheme instead of the mandatory minimum of six months in prison. Additionally, he argued the Legislature did not intend for the mandatory six-month confinement period to apply to offenders who were sober at the time of the driving offense.

4

On December 19, 2016, Judge Adam E. Jacobs issued a written opinion denying defendant's motion to dismiss. Judge Jacobs rejected defendant's various arguments, and declined to hold the statute unconstitutional.

First, Judge Jacobs found the mandatory six-month prison sentence does not amount to cruel and unusual punishment. As the judge reasoned:

> The punishment of 180 days in a county jail facility conforms to contemporary standards of decency proportionate to deter the conduct in question and is consistent with the statute's overall penological objective to keep the public safe for a substantial period of time from those who have exercised exceedingly poor judgment vis a vis conduct with potentially lethal consequences. . . .
>
> Further with respect to proportionality, as the Appellate Division noted in [State v.]French, [437 N.J. Super. 333 (App. Div. 2014)], there exist other fourth-degree crimes, such as N.J.S.A. 2C:12-2(b)(2) Reckless Endangerment, that require a mandatory minimum incarceration of six months. French, 437 N.J. Super. at 338. It is also well-settled that incarceration in county jail is not violative of the presumption against incarceration, even for first offenders. State v. Hartye, 105 N.J. 411, 420 (1987).

Judge Jacobs also rejected defendant's due process and equal protection arguments, observing:

> This Court is mindful that the Legislature enacted N.J.S.A. 2C:40-26(b) to combat the increasing number of fatalities caused by intoxicated drivers, and to supplement preexisting measures as a deterrent to those who ignore orders to refrain from driving while their licenses are under suspension. To that end, this Court

5

> finds that the statute as it stands is not unreasonably arbitrary and is substantially related to achieving the Legislature's ultimate public policy objective of safeguarding society. This Court, therefore, rejects Pimentel's contention that the statute at issue deprives him of his rights to Due Process and Equal Protection.

Lastly, Judge Jacobs found this court's decisions in French, 437 N.J. Super. at 336, and State v. Harris, 439 N.J. Super. 150, 160 (App. Div. 2015), repudiated defendant's argument of legislative intent, and determined the 180-day custodial term is clearly mandatory.

Following the denial of his motion to dismiss, defendant conditionally pled guilty to fourth-degree driving during a period of license suspension due to a second or subsequent DWI. The false reporting and identity theft counts were dismissed.

Judge Jacobs sentenced defendant to one year of probation, conditioned upon six months in Passaic County Jail. In calibrating the non-mandatory facets of the sentence, the judge found applicable aggravating factors three, N.J.S.A. 2C:44-1(a)(3), six, N.J.S.A. 2C:44-1(a)(6), and nine, N.J.S.A. 2C:44-1(a)(9). Aggravating factor three applied "based upon just the sheer volume—number of [defendant's] contacts and adjudications in the Criminal Justice System." Aggravating factor six was based on "the extent of those contacts." Aggravating factor nine was based on "the need to deter [defendant] and others from violating the law."

6

The judge also found mitigating factors seven, N.J.S.A. 2C:44-1(b)(7), and ten, N.J.S.A. 2C:44-1(b)(10), applied because defendant had shown, "a substantial period of law-abiding activity . . . [and], the likelihood that [defendant] will make a good probationer." Although he commented favorably on defendant's cooperation and "exceptional work history," Judge Jacobs nonetheless found that "the aggravating factors outweigh[ed] the mitigating factors justifying [a] sentence in the fourth-degree range."

The judge stayed the sentence until defendant's appeal as to the constitutionality of N.J.S.A. 2C:40-26 was heard by this court.

This appeal followed. In his brief, defendant makes the following arguments:

> I. N.J.S.A. 2C:40-26 FAILS TO REFLECT THE LEGISLATURE'S INTENT BY REMOVING JUDICIAL DISCRETION, WHICH THEY EXPRESSLY BELIEVED COURTS WOULD RETAIN TO AVOID UNJUST RESULTS.
>
> II. THE MANDATORY SIX-MONTH SENTENCE UNDER N.J.S.A. 2C:40-26 CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT AND THE NEW JERSEY CONSTITUTION.
>
> III. THE MANDATORY SIX-MONTH SENTENCE UNDER N.J.S.A. 2C:40-26 IS BOTH FUNDAMENTALLY UNFAIR AND DISCRIMINATORY IN VIOLATION OF EQUAL PROTECTION AND THE FUNDAMENTAL RIGHT

7

TO LIBERTY ENSHRINED IN THE DUE PROCESS CLAUSE.

> A. The Fundamental Right To Liberty Currently Does Not Mandate Heightened Review For Criminal Statutes That Mandate Incarceration, As The Liberty Right Is Deemed Forfeited Upon A Valid Conviction.
>
> B. Strict Scrutiny Should Apply To Statutes That Impose Harsh, Mandatory Sentences That Prohibit The Exercise Of Judicial Discretion At Sentencing.
>
> C. The Six-Month Sentence Violates The Principle Of Fundamental Fairness Encompassed Within The Due Process Clause.

As we explain in this opinion, these contentions all lack merit.

II.

In 2009 the Legislature adopted N.J.S.A. 2C:40-26. As the Supreme Court recently noted in State v. Rodriguez, 238 N.J. 105, 115 (2019), the law was "enacted to 'create[] criminal penalties for persons whose driver's licenses are suspended for certain drunk driving offenses and who, while under suspension for those offenses, unlawfully operate a motor vehicle.'" (quoting Sponsor's Statement to S. 2939 2 (L. 2009, c. 333; Sponsor's Statement to A. 4303 2 (L. 2009, c. 333) (identical)).

To effectuate this goal of criminalization, "N.J.S.A. 2C:40-26 makes it a crime of the fourth-degree to either: (a) operate a motor vehicle, for the second

time, during a period of suspension for a DWI; or (b) operate a motor vehicle with a suspended license for a second or subsequent DWI." Rodriguez, 238 N.J. at 115.

The focus of the present case is upon the statute's mandatory minimum custodial sentence. "Consistent with N.J.S.A. 2C:40-26's stated purpose, it specifically provides that an individual convicted under either N.J.S.A. 2C:40-26(a) or (b) shall be sentenced to a 'fixed minimum sentence of not less than 180 days during which the defendant shall not be eligible for parole.'" Ibid. (alteration in original) (emphasis added) (quoting N.J.S.A. 2C:40-26(c)).

In Rodriguez, the Court concluded the "plain language" of the mandatory sentencing provision in N.J.S.A. 2C:40-26(c), id. at 115, disallows drivers convicted under the statute to serve any of their jail time intermittently on nights or weekends, despite generic language in the Criminal Code at N.J.S.A. 2C:43-2 allowing intermittent sentencing on a discretionary basis for certain offenses.

As this court previously observed in State v. Carrigan, 428 N.J. Super. 609, 614 (App. Div. 2012), "the strengthened penalty [of N.J.S.A. 2C:40-26] was legislatively prompted, at least in part, by reports of fatal or serious accidents that had been caused by recidivist offenders with multiple prior DWI violations, who nevertheless were driving with a suspended license." (quoted with approval in Rodriguez, 238 N.J. at 116).

9

In Carrigan, we rejected a different claim of unconstitutionality than the ones defendant now advances here – a claim the statute is an invalid ex post facto law that allegedly punishes past conduct. We explained in Carrigan that "a violation of N.J.S.A. 2C:40-26(b) comprises a new offense based on new conduct, and that the statute does not impose retrospective punishment for a prior offense." Id. at 617. The new proscribed conduct is the defendant's act of "getting behind the wheel after August 1, 2011 [the effective date of the statute] while still under [a second or subsequent DWI] suspension." Id. at 622.

The arguments of unconstitutionality raised by defendant concerning N.J.S.A. 2C:40-26 present questions of first impression. We review those questions de novo because they concern issues of law. State v. Robinson, 217 N.J. 594, 602 (2014); State v. Galicia, 210 N.J. 364, 381 (2012).

Similarly, we review de novo defendant's separate argument that the statute should be interpreted to allow judges to have discretion to not impose the 180-day minimum custodial sentence. "Questions related to statutory interpretations are legal ones." State v. S.B., 230 N.J. 62, 67 (2017). Thus, "[w]e review such decisions de novo . . . ." Ibid. (quoting State v. Grate, 220 N.J. 317, 329 (2015)).

We address the substance of defendant's arguments in a slightly different sequence than presented in his brief.

10

## A.

We begin with defendant's claim that the 180-day minimum custodial sentence called for under N.J.S.A. 2C:40-26 unconstitutionally inflicts upon persons who violate the statute a cruel and unusual punishment. We agree with the trial judge this claim fails.

The Eighth Amendment of the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The provision applies to the States through the Fourteenth Amendment. Roper v. Simmons, 543 U.S. 551, 560 (2005). The Eighth Amendment's prohibition against punishment "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned to the offense.'" Ibid. (quoting Atkins v. Virginia, 536 U.S. 304, 311 (2002)).

Courts generally "interpret the Eighth Amendment 'according to its text, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design.'" State v. Zuber, 227 N.J. 422, 438 (2017) (quoting Roper, 543 U.S. at 560). The analysis commonly involves "refer[ence] to 'the evolving standards of decency that mark the progress of a maturing society.'" Roper, 543 U.S. at 561 (quoting Trop v. Dulles, 356 U.S. 86, 100-01 (1958) (plurality opinion)). Similarly, Article I, Paragraph 12 of the

11

New Jersey Constitution also bars "cruel and unusual punishments." N.J. Const. art. I, ¶ 12.

Our State Supreme Court has developed a three-part test for determining whether a criminal penalty imposes an unconstitutional cruel and unusual punishment. State v. Maldonado, 137 N.J. 536, 556 (1994). "We consider, first, whether the punishment conforms with contemporary standards of decency; second, whether the punishment is grossly disproportionate to the offense; and third, whether the punishment goes beyond what is necessary to accomplish any legitimate penological objective." State v. Johnson, 166 N.J. 523, 548 (2001) (citing the three Maldonado factors). In the absence of "a substantial showing that the statute violates those principles, the judiciary must respect the legislative will and enforce the punishment." Ibid. (citing State v. Hampton, 61 N.J. 250, 274 (1972)).

Defendant has not established any of the prongs of this three-part test.

1.

First, with respect to "contemporary standards of decency," defendant argues that a majority of other states do not criminalize the conduct proscribed by N.J.S.A. 2C:40-26, and the minority of states that do make the conduct a criminal offense mostly call for less severe or discretionary punishment. This

12

comparison is flawed, and does not prove that our New Jersey law is so punitive as to go beyond what contemporary standards of decency allow.

Our own research reveals that several other states authorize harsh penalties, including jail time, that can be imposed upon motorists who drive with a license that has been suspended due to one or more previous DWIs. Some of those states authorize jail time, depending on the circumstances and defendant's offense history, that matches or exceeds the 180-day sentence mandated by N.J.S.A. 2C:40-26.

For example, West Virginia law mandates that a motorist who commits a second offense of driving with a license that has been revoked because of a previous DWI "shall be confined in jail for a period of not less than six months nor more than one year." W. Va. Code § 17B-4-3(b) (2017). For a third or subsequent offense, the person is guilty of a felony, and "shall be imprisoned . . . for not less than one year nor more than three years." Ibid.

Rhode Island comparably imposes a minimum six-month prison sentence for driving with a suspended license due to a second DWI offense within a five-year period. 31 R.I. Gen. Laws § 31-11-18.1(c)(2) (1956). The penalty is increased to a one-year minimum for driving with a suspended license due to a third DWI within a five-year period. Id. at § 31-11-18.1(c)(3).

13

Connecticut, meanwhile, mandates a thirty-day minimum and one-year maximum jail sentence for first-time offenders who operate a motor vehicle during a period of license suspension pursuant to a DWI. Conn. Gen. Stat. § 14-215(c)(1) (2016). Any person who operates a motor vehicle during such a period of license suspension due to a second DWI faces a minimum sentence of 120 days in jail, and a maximum sentence of two years. Id. at § 14-215(c)(2). The 120-day minimum "may not be suspended or reduced in any manner . . . in the absence of any mitigating circumstances as determined by the court." Ibid. Even more severely, driving with a suspended license pursuant to a third or subsequent DWI in Connecticut carries a minimum custodial term of one year, and a maximum term of three years. Id. at § 14-215(c)(3). That minimum sentence also may not be suspended or reduced, absent any mitigating circumstances as determined by the court. Ibid.

Pennsylvania imposes a mandatory sixty-day minimum sentence for driving without a license pursuant to a single DWI. 75 Pa. Cons. Stat. § 1543 (2018). A ninety-day minimum attaches to a second violation of the Pennsylvania statute, and a third or subsequent driving with a suspended license for reason of a DWI carries a minimum of six months in prison. Id. at §1543(b)(1).

14

In South Carolina, a person who drives a motor vehicle on a public highway of the state when that person's license has been suspended for a third or subsequent DWI faces a mandatory prison sentence of "not less than six months nor more than three years." S.C. Code Ann. § 56-1-460(A)(2)(c).

Hawaii likewise imposes mandatory minimum custodial terms for driving with a suspended license because of a previous DWI. Haw. Rev. Stat. § 291E-62(c) (2019). A defendant must serve a minimum of three days in prison for a first offense. Ibid. If a defendant drives with a suspended license when that license suspension was due to second DWI offense within a five-year period, the Hawaii statute imposes a minimum sentence of thirty days in prison. Ibid. For a third offense occurring within a five-year period, there is a mandatory minimum of one year in prison. Ibid. Any person convicted of violating the statute "shall be sentenced . . . without possibility of probation or suspension of [the] sentence." Ibid.[1]

---

[1] Other states have statutes with mandatory jail provisions, although shorter than 180 days. See, e.g., Colo. Rev. Stat. § 42-2-138 (2017) (imposing minimum sentences of thirty days in prison for a first violation of operating a motor vehicle on a suspended license due to a DWI; and ninety days for a second or subsequent conviction. Such sentences are mandatory and the court does not have the discretion to suspend the sentence unless the defendant can "establish that he or she had to drive the motor vehicle . . . because of an emergency . . . [.]"); Kan. Stat. Ann. § 8-262(a)(4) (imposing a minimum ninety-day jail term for driving with a suspended license due to two or more DWIs, and not allowing for a suspension of the mandatory minimum).

15

Although the laws of these other states are not identical in all respects to New Jersey's statute, they reflect that courts in those other jurisdictions are empowered to impose harsh custodial sentences upon motorists who drive with a license that has been revoked because of one or more previous DWI offenses. Depending upon the defendant's prior history, the allowable jail time in some of those states can exceed the 180-day minimum prescribed by N.J.S.A. 2C:40-26. And, in several of those other states, the penalties are mandatory, or the sentencing court's discretion is greatly curtailed.

We recognize that more than half of the states do not impose equivalent or comparable custodial sanctions for this kind of wrongful behavior. Even so, the approaches of a majority of other states do not comprise a litmus test for what transgresses "contemporary standards of decency." The laws of New Jersey, West Virginia, Rhode Island, and the other states we have cited may be at the harsher end of the penological spectrum, but their stringent approaches are not unconstitutionally punitive.

---

Still others have laws that authorize but do not mandate jail time. See Fla. Stat. § 322.34(c) (2019) (prescribing that a defendant can be convicted of a felony in the third degree and sentenced to a maximum of five years in prison upon a third or subsequent conviction of driving with a suspended license, if the current or most recent prior violation of driving with a suspended license resulted from the license being suspended for driving under the influence); Mo. Rev. Stat. §302.321 (2017) (driving while revoked because of a second or subsequent DWI is a "class E felony," and the judge has the discretion to impose the maximum sentence of four years).

16

2.

Defendant also fails to demonstrate the second <u>Maldonado</u> factor of gross disproportionality. He argues that since the prohibited conduct at issue here is non-violent, the mandatory six-month minimum is grossly disproportionate. Because N.J.S.A. 2C:40-26(c) overrides the general presumption against imprisonment for first time offenders of fourth-degree crimes codified in N.J.S.A. 2C:44-1, defendant argues that the statute's mandatory 180-day jail term produces extreme sentencing disparities.

For example, defendant posits that a first-time offender of reckless aggravated assault, who causes bodily injury to another with a deadly weapon under N.J.S.A. 2C:12-1(b)(3), conceivably could receive no jail time due to this presumption, while a defendant who is found guilty of driving with a suspended license due to multiple previous DWIs must serve a minimum of six months in prison. Defendant also emphasizes that six months in prison is the same mandatory sentence reserved for a third or subsequent DWI offense under N.J.S.A. 39:4-50. He asserts these sentencing inconsistencies demonstrate the disproportionality of N.J.S.A. 2C:40-26, because what he characterizes as a "harmless traffic offense" can be punished more harshly than a first or second drunk driving offense or a violent crime.

Defendant also contends disproportionality is shown by the fact that, absent multiple previous DWIs, the maximum custodial penalty for driving with a suspended license on the third or subsequent occasion is only ten days. N.J.S.A. 39:4-40. He argues that N.J.S.A. 2C:40-26, which calls for a minimum jail sentence that is "eighteen times" that ten-day period, imposes a disproportionate sanction for what he construes to involve the same conduct.

We reject these claims of disproportionality. For starters, it is well settled that the Legislature has wide authority to enact mandatory minimum sentences to deter and punish specified criminal behavior. "The [L]egislature may constitutionally enact mandatory minimum sentence laws when necessary [to protect] the public interest." State v. Brown, 227 N.J. Super. 429, 440 (Law. Div. 1988) (citing State v. Des Marets, 92 N.J. 62, 80-81 (1983)).

In Des Marets, the Supreme Court upheld the constitutionality of the mandatory three-year minimum required by the Graves Act for someone who uses or possesses a firearm while "committing, attempting to commit, or fleeing after the commission of, certain serious offenses specified in that Act." Des Marets, 92 N.J. at 64. See also State v. Oliver, 162 N.J. 580 (2000) (upholding as constitutional a life-sentence without the possibility of parole imposed under the Persistent Offender Accountability Act (otherwise known as the Three Strikes Law), N.J.S.A. 2C:43-7.1(a)); State v. Hampton, 61 N.J. 250, 274 (1972)

18

(upholding a statute providing for a minimum sentence of [thirty] years and maximum of life imprisonment for kidnaping does not constitute cruel and unusual punishment); State v. Fearick, 69 N.J. 32 (1976) (upholding the constitutionality of a statute imposing a mandatory sentence of forty-five days imprisonment when a person whose license has been suspended is involved in an accident resulting in injury).

The selective comparisons drawn by defendant to other New Jersey criminal statutes do not establish that the minimum 180-day jail sentence mandated by N.J.S.A. 2C:40-26 is "grossly" disproportionate.

A useful counter-example is the "certain persons" weapons offense set forth in N.J.S.A. 2C:39-7. That statute increases criminal penalties by a significant amount, based on the defendant's status, due to prior conduct. The statute makes it a crime punishable by a minimum term of five years in prison for "certain persons" previously convicted of an enumerated crime to be in possession of a weapon. Ibid. The rationale is that the class of people who fall under the "certain persons" statute pose a greater risk to society, based on their propensity to commit crimes, and therefore should not possess a weapon. It is not "grossly disproportionate" to expose such "certain persons" to mandatory custodial sanctions greater than the lesser punishment they might receive for violating other weapons-possession laws.

19

Comparable to the "certain persons" statute, N.J.S.A. 2C:40-26 penalizes a distinctive class of defendants (i.e., drivers who are convicted of driving with a suspended license due to multiple DWIs) more harshly than it penalizes drivers who are caught driving with a license suspended for another reason. The Legislature seeks to keep recidivist drunk drivers off the road because they are a class of drivers posing a greater danger to other motorists or pedestrians. As Judge Jacobs aptly stated, such stringent punishment is "consistent with the statute's overall penological objective to keep the public safe for a substantial period of time from those who have exercised exceedingly poor judgment vis a vis conduct with potentially lethal consequences."

Although the 180-day jail term equals the mandatory minimum jail term for a third DWI offense, that equivalence does not make the coexistence of the two penalties constitutionally intolerable. The Legislature had the policy prerogative to treat both forms of wrongdoing with comparable severity. The sentences are not grossly disproportionate.

3.

As to the third Maldonado factor, we reject defendant's claim that the 180-day custodial minimum goes beyond "what is necessary to accomplish a legitimate penological objective."

20

This court has acknowledged the escalating penalties imposed by the Legislature in an attempt to deter chronic drunk drivers. For instance, in State v. Rizzitello, 447 N.J. Super. 301, 315 (App. Div. 2016), we observed that, historically, "the penalties for driving while intoxicated have consistently increased in severity as a means of deterring 'the senseless carnage on our highways' caused by those who drive drunk.'" Ibid. (quoting State v. D'Agostino, 203 N.J. Super. 69, 72 (Law Div. 1984)). "The Legislature's decision to criminalize the act of driving while one's license is suspended for a second or subsequent DWI conviction is the latest addition to this arsenal of deterrence." Ibid.

In Harris, 439 N.J. Super. at 160, we reinforced that point:

> The Legislature's purpose in requiring a mandatory period of 'imprisonment' for this offense, with no possibility of parole, is also clear. Alternatives to jail, like the . . . home detention and community service programs at issue here, do not protect the public in the same way as incarceration. This public safety consideration is especially relevant in the case of a defendant who loses his or her driving privileges for [a] DWI, but then continues to drive despite the license suspension.

Given the State's strong policy objective of deterring repeat drunk driving offenders, and our courts' long-standing acceptance of this legitimate objective, the six-month minimum jail term prescribed by N.J.S.A. 2C:40-26 does not go beyond what is necessary to achieve that goal. Although a driver need not be

21

under the influence of alcohol to violate N.J.S.A. 2C:40-26, the predicate conduct that puts him or her in a position to do so is his or her multiple previous instances of drunk driving. The stiff penalty imposed serves as a permissible deterrent.

In sum, defendant fails to establish that the 180-day mandatory custodial sentence imposed upon him amounts to "cruel and unusual" unconstitutional punishment.

B.

We next turn to defendant's related arguments that the statute's mandatory minimum jail term violates constitutional principles of due process and equal protection. Like the trial judge, we conclude these arguments have no merit.

Defendant argues the mandatory sentence imposed by N.J.S.A. 2C:40-26 violates equal protection and due process principles because increasing "eighteen-fold" the length of a sentence normally imposed for driving with a suspended license leads to what defendant contends is an "unconscionable" outcome and a "capricious" disregard for his fundamental right to liberty. We disagree.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," meaning that all persons similarly situated should be treated alike.

22

City of Cleburne, Tex. v. Cleburne Living Center, 472 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)). The general rule is that legislation is presumed to be valid if the statute's classification is rationally related to a legitimate state interest. Id. at 440 (citing Schweiker v. Wilson, 450 U.S. 221, 230 (1981)). However, when a statute classifies by race, alienage, national origin, or imposes upon a fundamental right, the law is subject to strict scrutiny review, and will be sustained under the Equal Protection Clause only if it is narrowly tailored to serve a compelling state interest. Ibid. (citing McLaughlin v. Florida, 379 U.S. 184, 192 (1964)). When a Legislature makes classifications based on gender, review of the statute also calls for a heightened standard of review. Ibid. Otherwise, the rational basis standard applies to the classification.

Defendant also claims a violation of substantive due process under the Fourteenth Amendment. The doctrine forbids the government from infringing upon "certain 'fundamental' liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). A right is fundamental when it is "rooted in the traditions and conscience of our people." Id. at 303. However, where no fundamental right is implicated, it is sufficient that the regulation is rationally related to the government's legitimate interest. Ibid.

23

In sum, the federal equal protection and due process doctrines both require heightened scrutiny only where a deprivation of a fundamental right is at stake or a suspect class is involved. Otherwise, a mere rational basis standard applies.

Defendant acknowledges the fundamental right to liberty is extinguished by a valid conviction. He nonetheless requests this court adopt a new, more demanding standard of judicial scrutiny for situations like this, where a defendant's liberty interest allegedly is at stake. We reject that invitation.

Defendant's brief essentially blends together his due process and equal protection arguments. To advance his contentions, defendant invokes not only the United States Constitution but also cognate aspects of the New Jersey Constitution.

Within the New Jersey Constitution, the principles of both equal protection and due process derive from the same constitutional language, which states: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." N.J. Const. art. I, ¶ 1.

Article I does not contain the terms "equal protection" or "due process." However, "it is well settled that the expansive language of that provision is the source for both of those fundamental [state] constitutional guarantees."

24

Sojourner A. v. N.J. Dep't of Human Servs., 177 N.J. 318, 332 (2003) (quoting Planned Parenthood of Cent. N.J. v. Farmer, 165 N.J. 609, 629 (2000)).

The analysis of due process and equal protection under the New Jersey Constitution slightly differs from analysis of those fundamental rights under the United States Constitution. Greenberg v. Kimmelman, 99 N.J. 552, 567 (1985). Starting with the New Jersey Supreme Court's decision in Robinson v. Cahill, 62 N.J. 473, 491-92 (1973), the Court began to develop an independent analysis of state constitutional rights under Article I, Paragraph 1, that "rejected two-tiered equal protection analysis . . . and employed a balancing test in analyzing claims under the state constitution." Greenberg, 99 N.J. at 567 (quoting Taxpayers Ass'n of Weymouth Twp. v. Weymouth Twp., 80 N.J. 6 (1976)). That balancing test considers "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Ibid. (citing Right to Choose v. Byrne, 91 N.J. 287, 308-09 (1982)).

In later cases, the Court at times has applied traditional federal tiers of scrutiny to an equal protection analysis, instead of a balancing test.  "Where a statute does not treat a 'suspect' or 'semi-suspect' class disparately, nor affect a fundamental right [including a liberty interest], the provision is subject to a 'rational basis' analysis." State v. Lagares, 127 N.J. 20, 34 (citing Dandridge v. Williams, 397 U.S. 471 (1970)).  Under this analysis, the government action

25

only must be "rationally related to the achievement of a legitimate state interest." Ibid. (citing Byrne, 91 N.J. at 305); see also Lewis v. Harris, 188 N.J. 415, 443 (2006).

Although the terms of the balancing test and the tiered-scrutiny test differ, the Court in Sojourner, pointed out that "although our mode of analysis [under the New Jersey Constitution] differs in form from the federal tiered approach, the tests weigh the same factors and often produce the same result." 177 N.J. at 333 (citing Barone v. Dep't of Human Servs., 107 N.J. 355, 368 (1987)).

Bearing in mind these various doctrinal tests, we are satisfied the 180-day mandatory minimum jail term prescribed by N.J.S.A. 2C:40-26 does not violate due process or equal protection principles under either the United States or New Jersey Constitutions. As defendant concedes, driving on public roadways, while an important privilege for eligible persons, is not a "fundamental" right. Under the federal constitution, strict scrutiny review does not apply here. See San Antonio Ind. Sch. Dist. v. Rodriguez, 411 U.S. 1, 17 (1973).

Nor are persons such as defendant who have had their driving privileges revoked due to multiple previous DWIs offenses a "suspect" class. Ibid. To the contrary, their classification by the Legislature as a distinctive group of wrongdoers is rational and manifestly justified. It is not fundamentally unfair to treat them differently than other motorists who are caught driving without a

valid driver's license. Their recidivist behavior can be punished more severely, no matter which "tier" of federal scrutiny is applied to the statute. Likewise, we discern no grounds to afford such motorists greater protection under our State Constitution.

In sum, we concur with the trial judge in rejecting defendant's due process and equal protection arguments, under both federal and state law.

C.

Lastly, we briefly consider defendant's claim that the Legislature intended N.J.S.A. 2C:40-26 to repose judges with discretion to abate the 180-day minimum jail sentence mandated by the terms of the statute. Defendant cites to audio portions of the legislative hearings, arguing they reflect a desire on the part of individual legislators to afford such sentencing discretion.

This argument of statutory interpretation is unavailing. The terms of the statute are clear on their face, and there is no reason to consult extrinsic sources to divine their meaning. State v. Harper, 229 N.J. 228, 237-38 (2017).

Further, defendant's claims about the non-discretionary nature of the 180-day minimum penalty are dispelled by the Court's recent opinion in Rodriguez, 238 N.J. at 105, which strictly enforced the 180-day jail requirement and held the sentence cannot be served in intermittent stretches. As the Court highlighted in Rodriguez, the statute calls for a mandatory "fixed" period of incarceration.

27

Id. at 116-17. There is simply no interpretative basis for a sentencing judge to have the discretion to impose a lesser sanction.

### III.

For all of these reasons, defendant's arguments to avoid the mandatory 180-day custodial sentence under N.J.S.A. 2C:40-26 are rejected. The trial court's sound decision is affirmed.

To the extent we have not mentioned them explicitly, defendant's remaining contentions lack sufficient merit worthy of discussion. R. 2:11-3(e)(2).

The stay of defendant's sentence is vacated, effective in twenty days, during which time counsel and the trial court shall make arrangements for defendant to begin serving his mandated sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION