**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1633-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RAHEEM D. SIMMONS,

    Defendant-Appellant.

_____

> Submitted January 26, 2022 – Decided February 14, 2022
>
> Before Judges Hoffman and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 12-10-2621.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Phuong V. Dao, Designated Counsel, on the brief).
>
> Andrew J. Bruck, Acting Attorney General, attorney for respondent (Amanda G. Schwartz, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Raheem Simmons appeals from an October 20, 2020 Law Division order denying his pro se petition for post-conviction relief (PCR). Defendant was barely eighteen years of age at the time he shot two victims over a monetary dispute, killing them. Defendant contends he should have been considered a "juvenile," pursuant to Miller v. Alabama, 567 U.S. 460 (2012), as adopted by our Supreme Court in State v. Zuber, 227 N.J. 422 (2017). On that basis, defendant asserts that his sentence of thirty years imprisonment, subject to an eighty-five percent period of parole ineligibility, amounts to the functional equivalent of life without parole, contrary to Zuber.

Defendant also asserts that he is entitled to resentencing in light of the Legislature's recent passage of N.J.S.A. 2C:44-1(b)(14), establishing youth as a mitigating factor. Lastly, defendant argues that he received ineffective assistance of counsel because his counsel did not argue that defendant was entitled to leniency under Miller and Zuber. We affirm.

I.

We glean the following facts from the record. On July 26, 2011, Camden City Fire and Ambulance personnel responded to a report of a car fire; upon checking the car's interior, they discovered the deceased bodies of Antwan

2

Brown and Trevon Kinard (the victims). Autopsies of the victims revealed they died from gunshot wounds.

Approximately one year after the fatal shooting of the victims, defendant was charged with two counts of first-degree murder for his role in their deaths. According to the State, defendant, born on July 13, 1993, and his co-defendant, Phillip Byrd, entered the back seat of the car driven by the victims and shot them in a dispute over money.

Less than two months after the fatal shooting of the victims in Camden, defendant was involved in another shooting, on September 18, 2011, in Atlantic County. As a result, defendant was charged in Indictment 12-04-0942. On March 14, 2013, defendant pled guilty to a homicide crime for that shooting. On July 18, 2013, the court in Atlantic County sentenced defendant to thirty years in prison with thirty years of parole ineligibility.

In the matter under review, defendant appeared for trial on March 18, 2014. During the voir dire conference, the State extended a final plea offer, which defendant accepted, after reviewing the offer with his attorney. The plea offer provided for the downgrade of the two charges of first-degree murder to first-degree aggravated manslaughter, and for each count, defendant would receive a thirty-year sentence, subject to the No Early Release Act (NERA),

A-1633-20

N.J.S.A. 2C:43-7.2. The sentences would run concurrently to each other and concurrently to the sentence defendant already received for the Atlantic County homicide.

Before accepting defendant's plea, the trial judge engaged in a colloquy with defendant regarding the plea agreement and elicited a factual basis for the amended charges. The judge found defendant's guilty plea knowing and voluntary and that the factual basis supported the charges. Therefore, he accepted defendant's guilty plea to two counts of first-degree aggravated manslaughter.

On May 30, 2014, defendant appeared for sentencing. During the hearing, the judge note that defendant had six juvenile adjudications and one conviction for murder. The judge found aggravating factors three (risk of re-offense); six (defendant's prior criminal record); and nine (need to deter). N.J.S.A. 2C:44-1a(3), (6), (9). The judge found no mitigating factors. Therefore, when weighing the "aggravating and mitigating factors on a qualitative, as well as a quantitative basis," the judge found "the aggravating factors outweigh the mitigating factors, and they do so clearly and convincingly." In deciding whether or not to accept the plea agreement, the judge considered the "nature and degree of the crime, the need for punishment and deterrence, the defendant's

4

prospects for rehabilitation, the presentence report, the defendant's previous involvement in the criminal justice system, the recommendations of the prosecutor and the probation department, the terms of the plea agreement and the interest of the public." After finding that the "plea agreement appears to be fair, and in the interest of justice," the judge imposed the sentence set forth in the plea agreement – a thirty-year prison sentence subject to NERA for each count of first-degree aggravated manslaughter, the sentences to run concurrently to each other and concurrently to the sentence defendant previously received for the Atlantic County homicide. Consistent with the plea agreement, the judge dismissed all remaining charges.

Defendant appealed his sentence, with this court hearing oral argument on the appeal on December 14, 2014. During argument, defendant's counsel acknowledged that defendant is serving a thirty-year mandatory minimum term for the Atlantic County murder, and in this case, he received concurrent thirty-year sentences, which are also concurrent to the sentence to the Atlantic County case. This court affirmed defendant's sentence.

On April 26, 2019, defendant filed a pro se petition for PCR. On October 20, 2020, the same judge who accepted defendant's plea and imposed sentence heard oral argument on defendant's petition. Regarding defendant's claim that

his sentence was improper because it did not follow <u>Miller</u> and <u>Zuber</u>, the judge noted that because defendant was born on July 13, 1993, he would have been eighteen on the date of the shooting, and thus "defendant was not a juvenile at the time of the offense giving rise to his conviction, nor at the time he was sentenced. . . . Accordingly, the constitutional rules announced in <u>Miller</u> and <u>Zuber</u> do not apply to this defendant as he was not a juvenile at the time of the offense." The judge additionally noted that even if <u>Miller</u> and <u>Zuber</u> applied to defendant, his sentence "is not the functional equivalent of a life sentence without the possibility of parole" because "at the end of the maximum term of his sentence, the defendant will be [forty-eight] years of age." As a result, the judge determined that an "evidentiary hearing is not warranted" and denied PCR.

This appeal followed, with defendant raising the following arguments:

POINT I

DEFENDANT'S CLAIMS FOR PCR CLAIMS ARE NOT PROCEDURALLY TIME-BARRED

POINT II

DEFENDANT WAS BARELY EIGHTEEN YEARS OLD, AND THEREFORE, HIS SENTENCE OF THIRTY YEARS IS FACTUALLY EQUIVALENT TO LIFE WITHOUT PAROLE.

POINT III

THE CASE SHOULD BE REMANDED FOR RESENTENCING BASED ON THE PASSAGE OF N.J.S.A. 2C:44-1(b)(14) AS A NEW MITIGATING SENTENCING FACTOR.

POINT IV

DEFENDANT HAS MADE A PRIMA FACIE SHOWING OF INEFFECTIVE ASSISTANCE OF COUNSEL, AND THUS, THE PCR COURT ERRED IN NOT GRANTING AN EVIDENTIARY HEARING.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. Post-conviction relief serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must establish by a preponderance of the credible evidence that he or she is entitled to the requested relief. Ibid. (citations omitted). The defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

Whether Defendant was a Minor at the Time of His Offense

We first address defendant's contention that he was entitled to the constitutional protections afforded to defendants who are minors at the time of

7

their offense, pursuant to <u>Miller</u> and <u>Zuber</u>. The United States Supreme Court has declared that certain juvenile sentencing schemes are unconstitutional based on the Eighth Amendment's ban on cruel and unusual punishment. <u>See</u> <u>Roper v. Simmons</u>, 543 U.S. 551, 568-70 (2005) (holding that it is unconstitutional to impose capital punishment for crimes committed while under the age of 18); <u>Graham v. Florida</u>, 560 U.S. 48, 82 (2010) (holding that juvenile offenders cannot be sentenced to life imprisonment without parole for non-homicide offenses); and <u>Miller</u>, 567 U.S. at 489 (holding that mandatory sentences of life without the possibility of parole are unconstitutional for juvenile offenders).

In 2017, our Supreme Court reviewed the sentencing of minors in New Jersey in <u>Zuber</u>. The Court considered whether the principles underlying <u>Miller</u> should apply to sentences that are the "practical equivalent of life without parole." 227 N.J. at 428.

In considering the constitutional issue, the Court framed the question as follows: "Will a juvenile be imprisoned for life, or will he have a chance at release?" <u>Id</u>. at 446. The Court acknowledged the "foundational principle" recognized in <u>Graham</u> and <u>Roper</u>: "that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." <u>Id</u>. at 445 (quoting <u>Miller</u>, 567 U.S. at 474) (emphasis added). As a

8

result, the Court in Zuber instructed that "the focus at a juvenile's sentencing hearing belongs on the real-time consequences of the aggregate sentence," so "judges must evaluate the Miller factors when they sentence a juvenile to a lengthy period of parole ineligibility for a single offense" and "when they consider a lengthy period of parole ineligibility in a case that involves multiple offenses." Zuber, 227 N.J. at 447 (emphasis added). The Court thus ruled that sentencing judges should evaluate the Miller factors at that time "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at 451 (quoting Miller, 567 U.S. at 480).

We are aware of our Supreme Court's recent decision in State v. Comer/State v. Zarate, __ N.J. __ (2022), in which the Court revisited "the constitutional limits that apply to sentences for juvenile offenders." Slip op. at 4. The Court began its analysis by recognizing:

> The law recognizes what we all know from life experience — that children are different from adults. Children lack maturity, can be impetuous, are more susceptible to pressure from others, and often fail to appreciate the long-term consequences of their actions. Miller, [567 U.S. at 477]. They are also more capable of change than adults. Graham [560 U.S. at 68]. Yet we know as well that some juveniles — who commit very serious crimes and show no signs of maturity or

rehabilitation over time -- should serve lengthy periods of incarceration.

The issue before the Court is how to meld those truths in a way that conforms to the Constitution and contemporary standards of decency. In other words, how to impose lengthy sentences on juveniles that are not only just but that also account for a simple reality: we cannot predict, at a juvenile's young age, whether a person can be rehabilitated and when an individual might be fit to reenter society.

[Ibid.]

James Comer committed felony murder while a juvenile, and was sentenced to the mandatory minimum sentence for felony murder under N.J.S.A. 2C:11-3(b)(1), a thirty-year term without the possibility of parole. Id. at 5, 10. James Zarate committed purposeful murder when he was fourteen years old, and was sentenced to life, subject to the eighty-five percent period of parole ineligibility imposed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Id. at 5, 16. He also received consecutive four- and nine-year terms for two other offenses. Id. at 16. Zarate will first be eligible for parole after serving more than forty years. Id. at 5. Zarate was later resentenced to life in prison with no consecutive terms. Id. at 18. On a second remand, Zarate was resentenced to a fifty-year NERA term. Id. at 21. "Zarate will be 56 years old when he is first eligible for parole." Ibid. The Court modified and affirmed his

10

sentence, but "declined to foreclose the possibility that Zarate might one day be able to return to court to show 'that he has sufficiently reformed himself to a degree that' his sentence is 'no longer . . . constitutional under the Eighth Amendment.'" Id. at 21-22 (alteration in original).

Comer and Zarate "argued that their sentences violated federal and state constitutional provisions that bar cruel and unusual punishment. See U.S. Const. amend. VIII; N.J. Const. art. I, ¶ 12." Id. at 5. They contended that the mandatory sentence of thirty or more years without parole required by N.J.S.A. 2C:11-3(b)(1), is unconstitutional when applied to juveniles. Ibid.

The Court explained that to determine whether a sentence is cruel and unusual, an independent analysis under Article I, Paragraph 12 of the New Jersey Constitution is appropriate. Id. at 25 (citing State v. Ramseur, 106 N.J. 123, 182 (1987)).

> The test under [the federal and state] Constitutions is "generally the same": "First, does the punishment for the crime conform with contemporary standards of decency? Second, is the punishment grossly disproportionate to the offense? Third, does the punishment go beyond what is necessary to accomplish any legitimate penological objective?" Zuber, 227 N.J. at 438 (quoting Ramseur, 106 N.J. at 169). If the punishment fails under any one of the three inquiries, "it is invalid." State v. Gerald, 113 N.J. 40, 78 (1988).
>
> [Ibid.]

"Although the test is similar under federal and state law, our State Constitution can confer greater protection than the Eighth Amendment affords." Id. at 26.

Defendant was eighteen years, thirteen days old at the time of the homicides at issue in this appeal. It is beyond dispute that he was not a juvenile. Nevertheless, he contends the thirty-year NERA sentence is cruel and unusual, asking us to extrapolate the principles established in Miller and Zuber that were recently applied and expanded by a bare majority of our Supreme Court in Comer and Zarate. Those cases deal with persons who were juveniles when they committed the offenses for which they were convicted. We are not inclined to extend the rationale of those cases to a person who was an adult at the time of the crime, even if he had only recently crossed the critical eighteen-year-old threshold. Defendant cites no published authority for the proposition that the principles announced in Miller, Zuber, Comer, and Zarate should be extrapolated to apply to persons who were adults at the time of the offense.

Defendant's Entitlement to Resentencing in light of N.J.S.A. 2C:44-1(b)(14)

On October 19, 2020, the Legislature amended N.J.S.A. 2C:44-1, which allows a sentencing judge to consider a defendant's youth as a statutory mitigating factor. Specifically, N.J.S.A. 2C:44-1(b)(14) now provides that a

judge "may properly consider" the following mitigating circumstance: "The defendant was under 26 years of age at the time of the commission of the offense."

The question of whether a newly enacted statute applies retroactively "is a purely legal question of statutory interpretation." State v. J.V., 242 N.J. 432, 442 (2020). "[T]he overriding goal of all statutory interpretation is to determine as best we can the intent of the Legislature, and to give effect to that intent." Ibid. (quoting State v. S.B., 230 N.J. 62, 67 (2017)). "To determine the Legislature's intent, we look to the statute's language and give those terms their plain and ordinary meaning, because 'the best indicator of that intent is the plain language chosen by the Legislature.'" Id. at 442- 43 (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). "If, based on a plain and ordinary reading of the statute, the statutory terms are clear and unambiguous," the law is applied "as written." Id. at 443 (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)). "Generally, new criminal statutes are presumed to have solely prospective application." Ibid. To overcome the presumption of prospective application, the Legislature must have used words that have demonstrated its clear intention to have retrospective application "so clear, strong, and imperative" that no other meaning can be attributed to them. Ibid.

(citing Weinstein v. Invs. Sav. & Loan Ass'n, 154 N.J. Super. 164, 167 (App. Div. 1977)).

Defendant asserts that he is entitled to resentencing following the passage of N.J.S.A. 2C:44- 7 1(b)(14) to consider defendant's relevant youth as a mitigating factor.  In State v. Bellamy, 468 N.J. Super. 29 (App. Div. 2021), we recently held that mitigating factor fourteen does not apply retroactively to criminal convictions that were not on direct appeal when the statute was enacted in 2020.

We are likewise mindful that the Court has granted certification in State v. Rahee Lane, A-17-21, __ N.J. __ (2021) (certification granted Oct. 18, 2021), in which the pure legal question before the Court is whether , and if so, to what extent, N.J.S.A. 2C:44-1(b)(14) applies retroactively.  Unless and until such time that the Court holds to the contrary in Lane,[1] we discern no basis to depart from our holding in Bellamy.  The new statutory mitigating factor does not apply to defendant, who

was sentenced almost eight years ago, in 2014.

---

[1] "Pipeline" retroactivity extends only to direct appears, not collateral PCR appeals.  Therefore, defendant could benefit from retroactive application of the new youth mitigating factor only if it is given "full" retroactive application.

Ineffective Assistance of Counsel

Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland, 466 U.S. at 686 (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)); State v. Fritz, 105 N.J. 42, 58 (1987). To establish a violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland. Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Ibid. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A defendant, in other words, "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (citation omitted).

Furthermore, in determining whether defense counsel's representation was deficient, "'[j]udicial scrutiny...must be highly deferential,' and must avoid

15

viewing the performance under the 'distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37 (1997) (quoting Strickland, 466 U.S. at 689). Moreover, "[t]he quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of [a] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006) (citing State v. Marshall, 123 N.J. 1, 165 (1991)).

The second prong of the Strickland test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. In determining whether defense counsel's alleged deficient performance prejudiced the defense, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, defendant bears the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"In order to establish a prima facie claim, a petitioner must do more than make bald assertions that [he or she] was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The petitioner must allege specific facts sufficient to support a prima facie claim.

<u>Ibid.</u> Furthermore, the petitioner must present these facts in the form of admissible evidence. In other words, the relevant facts must be shown through "affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." <u>Ibid.</u>; <u>see also</u> <u>R.</u> 3:22-10(c) ("Any factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification ... and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing.").

As a general proposition, we defer to a PCR court's factual findings "when supported by adequate, substantial and credible evidence." <u>State v. Harris</u>, 181 N.J. 391, 415 (2004) (quoting <u>Toll Bros, Inc. v. Twp. of W. Windsor</u>, 173 N.J. 502, 549 (2002)). However, when the trial court does not hold an evidentiary hearing, we "may exercise de novo review over the factual inferences drawn from the documentary record." <u>Id.</u> at 421 (citing <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284, 291 n.5 (3d Cir. 1991)). Similarly, we review de novo the PCR court's legal conclusions. <u>State v. Nash</u>, 212 N.J. 518, 540–41 (2013) (citing <u>Harris</u>, 181 N.J. at 415-16).

Defendant's principal contention is that his trial counsel was constitutionally ineffective because trial counsel did not argue that defendant deserved leniency under <u>Miller</u> and <u>Zuber</u>. Furthermore, defendant argues that

his trial counsel should have argued that his thirty-year prison sentence amounts to the functional equivalent of life without parole. These arguments lack merit.

Defendant was thirteen days beyond his eighteenth birthday at the time he committed the offenses in this case. It is beyond dispute that he was no longer a minor. Under the first <u>Strickland</u> prong, defendant must prove that his counsel's performance fell below an objective standard of reasonableness. <u>Strickland</u>, 46 U.S. at 687-88. Defendant's attorney's performance was objectively reasonable because, on their face, the constitutional protections outlined in <u>Miller</u> and <u>Zuber</u> do not apply to defendant. Because trial counsel's performance did not fall below a standard of objective reasonableness, defendant cannot establish that his trial counsel's representation resulted in any prejudice to defendant to satisfy the second <u>Strickland</u> prong.

Defendant's argument that he was entitled to an evidentiary hearing also lacks merit. Defendant did not establish a prima facie case for PCR. There were no genuine issues of material fact that the court could not resolve with reference to the existing record. An evidentiary hearing was not required to resolve any disputes. <u>R.</u> 3:22-10(b).

18

To the extent we have not directly addressed the balance of defendant's arguments, we find them to lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1633-20