DOMINICK G. FEBBI, *ET AL.* (BRL–1017–1–C to BRL–1017–407–C, INCLUSIVE), APPELLANTS-RESPONDENTS, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND FORD MOTOR COMPANY, RESPONDENTS-APPELLANTS.

Argued September 14, 1961—Decided October 23, 1961.

602

*Mr. Alfred C. Clapp* argued the cause for appellants-respondents (*Mr. Peter C. Cammelieri,* attorney, *Mr. Robert P. Gorman,* of counsel).

*Mr. Edward A. Kaplan* argued the cause for respondent-appellant Board of Review (*Mr. Clarence F. McGovern,* attorney).

*Mr. Benjamin Gross* argued the cause for respondent-appellant Ford Motor Company (*Messrs. Lynch & Milstein,* attorneys, *Mr. George R. Milstein,* of counsel).

The opinion of the court was delivered by

HANEMAN, J. This case involves a construction of section 5(d) of the Unemployment Compensation Law. (*N. J. S. A.* 43:21-5(d).)

Claimants are employees of Ford Motor Company (Ford), at its Mahwah plant. Ford suspended manufacturing operations on August 22, 1958 in order to retool for the production of its 1959 models. Claimants were laid off on this date and did not return to work until they were recalled on Monday, September 15. They worked on Monday, September 15, Tuesday, September 16, and until 10 A. M. Wednesday, September 17, when they ceased work pursuant to a strike order issued in a labor dispute with Ford. On Thursday, September 18, the dispute was settled and the

strike was terminated but, because of a lack of work, claimants were not recalled to work until the following week.

Claimants applied for and received benefits for total unemployment for the period of August 25 to September 14, inclusive. They chose to have these benefits computed on the basis of a benefit week beginning on Monday and extending through Sunday. *Regulation* 22.02 (c) of the Division of Employment Security (Division) which was adopted pursuant to *N. J. S. A.* 43:21–19(q) gives employees claiming total unemployment benefits the right to so choose.

Claimants also applied for partial unemployment benefits for the benefit week beginning Monday, September 15. No choice, however, as to the days comprising that benefit week was available because *Regulation* 22.02(a) requires that in applications by weekly employees for benefits for partial unemployment the benefit week must correspond to the payroll week which, in the case of Ford, was Monday through Sunday. Claimants were disqualified by the Bureau of Unemployment Benefits from any payments due to unemployment on September 17 on the grounds that the loss of work on that day was due to a labor dispute. *N. J. S. A.* 43:21–5(d).

On appeal by the claimants and Ford, the Appeal Tribunal of the Division held that claimants were not entitled to any benefits for the entire week in which the strike occurred. This decision resulted from its view that *N. J. S. A.* 43:21–5 forbids the payment of unemployment benefits in any week during which there has been a loss of work due to a labor dispute.

The Board of Review of the Division affirmed the Appeal Tribunal and ruled further that claimants were not entitled to the benefits already paid for the benefit week ending September 14. It based this conclusion on the fact that *Regulation* 23.01 provides that once it is determined that a disqualification exists in any week the disqualification applies to the entire *calendar* week. Thus it is seen that the disqualification, due to the labor dispute, for the benefit

week beginning Monday, September 15, resulted in disqualification for the *calendar* week in which that labor stoppage occurred. The outgrowth of that reasoning made Sunday, September 14, the first day of the *calendar* week, a day of disqualification. This day was also part of the benefit week for which total unemployment benefits had been awarded claimants and since an individual is not entitled to benefits for that part of a week preceding a day of disqualification the benefits paid were ordered to be repaid.

Claimants appealed to the Appellate Division which court remanded the matter *in limine* to the Board of Review for a resolution of a factual issue as to which there arose a dispute, *i. e.,* the cause of the unemployment on September 18 and 19. The Board of Review found that the stoppage of work on September 18 was caused by a labor dispute and that the stoppage of work on September 19 was due to a lack of work. This determination is not now questioned by any of the parties. The Appellate Division reversed the conclusion of the Board of Review disqualifying claimants, holding that they were entitled to receive total unemployment benefit for the benefit week ended September 14 as well as partial benefit for the week ended September 21. *Febbi v. Board of Review, Div. Empl. Sec.,* 65 *N. J. Super.* 57 (1961). Petition for certification was granted by this court, 34 *N. J.* 323 (1961).

Upon oral argument all parties agreed that claimants are entitled to benefits for the week of September 8 to 14. The problem before this court is therefore reduced to a construction of the Unemployment Compensation Law in order to ascertain whether claimants are entitled to benefits for a week in which their partial unemployment was caused for two days by a labor dispute (September 17, 18) and for one day by a lack of work (September 19).

All parties argue for an interpretation of the statute on an "all or nothing" basis. Claimants contend that an employee is disqualified only where he is unemployed for an entire week as the result of a labor dispute. Ford and

the Division argue that an employee is disqualified for the entire week in which any time was lost as a result of a labor dispute. We do not agree with either theory.

■ At the outset it is well to repeat certain basic principles and conclusions. It is a cardinal rule of statutory construction that the intention of the Legislature is to be derived from a view of the entire statute and that all sections must be read together in the light of the general intent of the act so that the auxiliary effect of each individual part of a section is made consistent with the whole. 2 *Sutherland, Statutory Construction, 3d ed.* 4812, §§ 4702, 4704 (1943) ; *Trugman v. Reichenstein,* 27 *N. J.* 280, 288 (1958) ; *Petition of Sheffield Farms Co.,* 22 *N. J.* 548, 554 (1956).

■ When the Legislature has clearly defined a term, the courts are bound by that definition. 2 *Sutherland, Statutory Construction,* §§ 3002, 4814 (3d ed. 1943) ; *Eagle Truck Transport, Inc. v. Board of Review, etc.,* 29 *N. J.* 280, 289 (1959).

In *Gerber v. Board of Review, etc.,* 20 *N. J.* 561 (1956), this court said, at *p.* 566:

"We cannot concern ourselves either with the wisdom or the limitations expressly set forth in the disqualification specifically defined in *N. J. S. A.* 43 :21–5(d). Specific conditions under which unemployment compensation can or should be paid where there is a work stoppage as a result of a labor dispute is clearly within the legislative province. This particular section deals with a sensitive area of policy on which there can be a reasonable difference of opinion, and our province is merely to interpret and apply it to particular situations as they are presented, keeping in mind the general policy of the act.

We are not permitted by construction to lessen or broaden the scope of a statute when the intention of the Legislature in a particular instance is clearly and plainly expressed."

The legislative policy underlying the enactment of section 5(d) has been said to be "to place the State in a completely neutral position without regard to the rightness or reasonableness of the position or demands of the employer or the employees." *Mortensen v. Board of Review, etc.,*

*N. J. Dept. of Labor and Ind.*, 21 *N. J.* 242, 246 (1956).
See also *Westinghouse Elec. Corp. v. Board of Review*, 25
*N. J.* 221 (1957).

It becomes necessary to examine· the particular statute
here involved in the light of the above precepts and judicial
conclusions.

*N. J. S. A.* 43:21–5 reads, as far as here material:

"An individual shall be disqualified for benefits: * * *
(d) For any week with respect to which it is found that his
unemployment is due to a stoppage of work which exists because
of a labor dispute at the factory, establishment, or other premises at
which he is or was last employed * * *."

The pivotal question is, "What did the Legislature intend
by the use of the word 'unemployment'?"

The Unemployment Compensation Law, *N. J. S. A.*
43:21–19(m)(1), has defined "unemployment" as follows:

"An individual shall be deemed 'unemployed' for any week during
which he is not engaged in full-time work and with respect to which
his remuneration is less than his weekly benefit rate * * *."

There is no uncertainty in this definition. The Legislature
has authoritatively demonstrated its intent in the use of the
word "unemployment."

Thus, by eliminating the words "his unemployment" and
interposing in place thereof the statutory definition of un-
employment as above quoted, *N. J. S. A.* 43:21–5(d) would
read: "An individual shall be disqualified for benefits
* * * (d) for any week with respect to which it is found
that [he] *is not engaged in full time work and with respect
to which his remuneration is less than his weekly benefit
rate* due to a stoppage of work which exists because of a
labor dispute * * *."

■■ We must therefore conclude that the disqualifica-
tion for any week arises only upon the existence of two
conditions due to a labor dispute, (1) failure to be engaged
in full-time work, and (2) failure to receive remuneration

at least equal to the weekly benefit rate. Where both of these conditions concur as a result of a labor dispute a claimant is disqualified for benefits. Conversely, in any week where the failure to work full time and to receive remuneration at least equal to the weekly benefit rate is attributable to a lack of work rather than to a labor dispute, a claimant is entitled to the payment of benefits. This is not to say that the sole cause of the employment deficiency must have been a labor dispute but rather that absent the time lost as a result of a labor dispute the employee would have earned a sum equal to his weekly benefit rate. The crux of the test, then, lies not in the reason for the unavailability of full-time employment but rather in the reason for the failure to earn wages equal to the benefit rate.

The legislative concept of neutrality envisions that the fund shall not be used to compensate for wage loss due to labor disputes. That policy is served by the result we reach. To use, in ascertaining whether an employee had earned the statutory minimum, a formula which would exclude wages lost through a labor dispute would contravene the legislative policy. Similarly, to employ a formula which would exclude all wages lost for lack of work in a week in which there was some unemployment attributable to a labor dispute would impose an arbitrary penalty upon the employee, foreign to the legislative policy. Thus, if the employee had worked one-half day and was idle for the balance of the week as the result of a labor dispute, it would thwart the legislative will to grant him unemployment benefits. On the other hand, if the employee were idle for one-half day as the result of a labor dispute and unemployed for the remainder of the week because of lack of work, it would be arbitrary to deny him any benefits. The Legislature nowhere commanded either of these results. On the contrary, those extreme positions conflict with both the sense of the statute and with its text.

The only manner in which it can be determined whether the failure to earn the statutory minimum is attributable

to a labor dispute is to add to a claimant's actual weekly earnings the amount of pay lost as a result of such dispute. If that sum is greater than his weekly benefit rate he is disqualified from receiving unemployment benefits, whereas, if that sum is less than his weekly benefit rate he is entitled to receive unemployment benefits. In effect, his earnings lost as a result of the labor dispute are treated, for purposes of determining eligibility for benefits, as if they had actually been earned and received. By so construing the statute the employee receives no unemployment compensation where his actual earnings, plus his assumed earnings, or earnings charged to him, i. e., those lost due to the labor dispute, exceed his benefit rate. Contrawise, where some time is lost due to a labor dispute but the wages lost for lack of work in the same week are in an amount sufficient to reduce his actual earnings below the statutory minimum, the employee is entitled to receive unemployment benefits.

The foregoing conclusion does not favor either the employer or the employee in the light of the asserted legislative policy and is consistent with the statutory policy to protect workers against the dire and distressing consequences of involuntary unemployment. See *Bogue Electric Co. v. Board of Review, etc.*, 21 *N. J.* 431 (1956).

The matter must therefore be remanded to the Division in order that it may determine, consistent with the foregoing, whether upon application of the method of computation described, the earnings chargeable to each claimant exceed his benefit rate. In any case, where such "earnings" did not exceed the benefit rate a proper allowance of compensation should be awarded.

Reversed and remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.