SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. S.B.** **(A-95-15) (077519)**

**Argued April 25, 2017 -- Decided July 20, 2017**

**TIMPONE, J., writing for the Court.**

In this appeal, the Court determines whether a youth ministry associated with a church or religious organization is exempt from the definition of a "youth serving organization" under N.J.S.A. 2C:7-22, a provision of Megan's Law.

Defendant S.B. was a congregant of the Eternal Life Christian Center (ELCC), a registered non-profit and religious institution.  Defendant was also subject to Megan's Law because of two sexual assault convictions in 1991.  To comply with the Megan's Law reporting requirements, defendant notified the ELCC pastors and elders of his convictions.  Defendant participated in the church's No Limits Youth Ministry (NLYM), the stated goal of which is "to prepare students to be effective at home, junior high, senior high, and college."

Based on defendant's participation in the NLYM, the grand jury indicted him for third-degree prohibited participation in a "youth serving organization," in violation of N.J.S.A. 2C:7-23.  Defendant moved to dismiss the indictment, arguing that the NLYM was not a youth serving organization under Megan's Law.

The trial court granted defendant's motion, reasoning that the statute was vague with respect to how religious institutions fit within the definition of youth serving organization.  The court distinguished the case from State v. J.B.W., 434 N.J. Super. 550 (App. Div. 2014), which found a violation of Megan's Law where a defendant participated in a school marching band's pit crew because it was separate from the school, making the statute's school exemption inapplicable.

The State appealed; the Appellate Division affirmed the indictment's dismissal.  445 N.J. Super. 49, 58-59 (2016).  The panel rejected the State's argument that the definition of youth serving organization encompassed the NLYM.  Id. at 55.  It reasoned that because the definition does not specifically address religious organizations, the Legislature did not intend to include religious organizations in the definition of youth serving organization.  Ibid.

The Court granted the State's petition for certification.  227 N.J. 124 (2016).

**HELD**: A plain-language reading of N.J.S.A. 2C:7-22 does not exempt a youth ministry associated with a church or other religious organization from the definition of "youth serving organization."

1.  N.J.S.A. 2C:7-23(a) provides, in relevant part, that "it shall be unlawful for an excluded sex offender to hold a position or otherwise participate, in a paid or unpaid capacity, in a youth serving organization."  N.J.S.A. 2C:7-22 defines "youth serving organization" as "a sports team, league, athletic association or any other corporation, association or organization, excluding public and nonpublic schools, which provides recreational, educational, cultural, social, charitable or other activities or services to persons under 18 years of age."  (p. 7)

2.  The text of N.J.S.A. 2C:7-22 is clear on its face:  "[A]ny other corporation, association, or organization" that provides activities or services to minors is a youth serving organization.  Churches clearly fall within the blueprint of the statute and its "any other" language.  The statute's only exemption is "public and nonpublic schools."  N.J.S.A. 2C:7-22.  The Legislature decidedly and explicitly exempted schools.  It chose not to categorically exempt any other type of organization, including religious organizations.  (pp. 7-8)

3.  The Legislature's primary objective in enacting Megan's Law was to create a registration system that provided law enforcement officials "with additional information critical to preventing and promptly resolving" incidents of

1

child sexual abuse.  <u>N.J.S.A.</u> 2C:7-1.  Any ambiguity would have been interpreted in a manner favoring the protection of children to effectuate the statute's legislative intent.  (pp. 8-9)

4.  The Court rejects defendant's contention that the Appellate Division's decision in <u>J.B.W.</u> compels the conclusion that the NLYM is not a youth serving organization.  Whereas organizations affiliated with schools must be shown to be sufficiently separate from those schools to fall outside the statute's school exclusion, that is not so with organizations affiliated with religious institutions.  The Legislature specifically excluded "public and non-public schools" from the definition of youth serving organization but did not provide a similar exclusion for religious or any other type of organization.  (pp. 9-12)

5.  The Court briefly comments on the Appellate Division's speculation concerning <u>N.J.S.A.</u> 2C:7-22 and the Free Exercise Clause of the United States Constitution.  The constitutional question was neither raised by the parties nor necessary to the analysis.  This matter is purely an issue of statutory interpretation and legislative intent.  (pp. 12-13)

        The judgment of the Appellate Division is **REVERSED**, the indictment is **REINSTATED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

        **CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

S.B.,

    Defendant-Respondent.

> Argued April 25, 2017 – Decided July 20, 2017
>
> On certification to the Superior Court, Appellate Division, whose opinion is reported at 445 N.J. Super. 49 (App. Div. 2016).
>
> Claudia Joy Demitro, Deputy Attorney General, argued the cause for appellant (Christopher S. Porrino, Attorney General of New Jersey, attorney; Claudia Joy Demitro, of counsel and on the briefs).
>
> Alison S. Perrone argued the cause for respondent (Alison S. Perrone, on the brief).

    JUSTICE TIMPONE delivered the opinion of the Court.

    In this appeal, we determine whether a youth ministry associated with a church or religious organization is exempt from the definition of a "youth serving organization" under N.J.S.A. 2C:7-22, a provision of Megan's Law.

    Defendant S.B. has two prior convictions for sexually assaulting teenage victims, which render him subject to the

provisions of Megan's Law, N.J.S.A. 2C:7-1 to -23 -- including registration and strict prohibitions concerning the supervision of children.  The latest indictment against defendant arose from his participation as a supervisor of children in a youth ministry associated with his church.  In pre-trial motions, the trial court dismissed the indictment, finding that the church's youth ministry was not a "youth serving organization" under the statute.  The Appellate Division affirmed the indictment's dismissal.  We disagree and reverse.

We conclude that a plain-language reading of N.J.S.A. 2C:7-22 does not exempt a youth ministry associated with a church or other religious organization from the definition of "youth serving organization."  We therefore reinstate the indictment and remand to the trial court for further proceedings.

I.

The facts advanced are undisputed.  Defendant S.B. was a congregant of the Eternal Life Christian Center (ELCC), a registered non-profit and religious institution.  Defendant was also subject to Megan's Law because of two sexual assault convictions in 1991, stemming from the sexual assaults of two teenage victims.  To comply with the Megan's Law reporting requirements, defendant notified the ELCC pastors and elders of his convictions.

2

Defendant participated in the church's No Limits Youth Ministry (NLYM), the stated goal of which is "to prepare students to be effective at home, junior high, senior high, and college." Defendant volunteered for the program as a youth leader, counselor, mentor, and chaperone for children ages twelve to seventeen. Specifically, he supervised children at concerts, youth group meetings, day camp, and movie nights.

Based on defendant's participation in the NLYM, the grand jury indicted him for third-degree prohibited participation in a "youth serving organization," in violation of N.J.S.A. 2C:7-23. Defendant moved to dismiss the indictment, arguing that the NLYM was not a youth serving organization under Megan's Law. The trial court granted defendant's motion, reasoning that the statute was vague with respect to how religious institutions fit within the definition of youth serving organization. The court distinguished the case from State v. J.B.W., 434 N.J. Super. 550 (App. Div. 2014), which found a violation of Megan's Law where a defendant participated in a school marching band's pit crew because it was separate from the school, making the statute's school exemption inapplicable. The trial court here determined that the NLYM was indistinguishable from the ELCC and defendant's indictment should be dismissed.

The State appealed; the Appellate Division affirmed the indictment's dismissal. State v. S.B., 445 N.J. Super. 49, 58-

3

59 (2016). The panel rejected the State's argument that the definition of youth serving organization encompassed the NLYM. Id. at 55. It reasoned that because the definition does not specifically address religious organizations, the Legislature did not intend to include religious organizations in the definition of youth serving organization. Ibid. The panel added that Megan's Law makes specific reference to religious organizations in another section of the statute, finding its omission from the definition of youth serving organization purposeful. Id. at 56.

We granted the State's petition for certification. 227 N.J. 124 (2016).

## II.

### A.

The State argues that the Court should reverse the Appellate Division for three reasons: (1) a youth ministry associated with a church or religious organization is a youth serving organization as defined by Megan's Law; (2) religious organizations are not categorically exempt from the statute's protections; and (3) the question of whether a group is a youth serving organization is a factual one that should be determined by a jury. In the State's view, children in religious settings should receive the same protection under Megan's Law that children in secular groups receive.

4

B.

Defendant maintains that the NLYM is part of the ELCC and therefore is not a "youth serving organization" as defined by N.J.S.A. 2C:7-22. Defendant asserts that religious organizations are exempt under the statute because of (1) the statute's plain language; (2) the Legislature's design of Megan's Law as a whole; and (3) the Appellate Division's decision in J.B.W.

III.

A.

The issue in this case is one of statutory interpretation: whether a youth ministry associated with a church may constitute a "youth serving organization" pursuant to the definition of that term in N.J.S.A. 2C:7-22.

Questions related to statutory interpretation are legal ones. State v. Revie, 220 N.J. 126, 132 (2014). We review such decisions de novo, "unconstrained by deference to the decisions of the trial court or the appellate panel." State v. Grate, 220 N.J. 317, 329 (2015). Similarly, in cases like this, we review a trial court's decision to dismiss an indictment de novo because it did not involve "a challenge to fact-finding on the part of the trial court." State v. Cagno, 211 N.J. 488, 505 (2012), cert. denied, 568 U.S. 1104, 133 S. Ct. 877, 184 L. Ed. 2d 687 (2013).

B.

The overriding goal of all statutory interpretation "is to determine as best we can the intent of the Legislature, and to give effect to that intent." State v. Robinson, 217 N.J. 594, 604 (2014) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)). To ascertain legislative intent, we begin with the statute's plain language and give terms their ordinary meaning. DiProspero v. Penn, 183 N.J. 477, 492 (2005). In order to construe the meaning of the Legislature's selected words, we can also draw inferences based on the statute's overall structure and composition. State v. Hupka, 203 N.J. 222, 231-32 (2010). If the Legislature's intent is clear on the face of the statute, then the "interpretative process is over." Id. at 232 (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195-96 (2007)).

When the Legislature sets out to define a specific term, "the courts are bound by that definition." Febbi v. Bd. of Review, 35 N.J. 601, 606 (1961). "It is not our function to rewrite a plainly written statute or to presume that the Legislature meant something other than what it conveyed in its clearly expressed language." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012). When the plain language is ambiguous, however, we consider extrinsic interpretative aids, including legislative history. Hupka, supra, 203 N.J. at 232.

6

With those principles in mind, we turn to the language of the statute.

## IV.

## A.

N.J.S.A. 2C:7-23(a) provides, in relevant part, that "it shall be unlawful for an excluded sex offender to hold a position or otherwise participate, in a paid or unpaid capacity, in a youth serving organization." N.J.S.A. 2C:7-22 defines "youth serving organization" as

> a sports team, league, athletic association or any other corporation, association or organization, excluding public and nonpublic schools, which provides recreational, educational, cultural, social, charitable or other activities or services to persons under 18 years of age.

We reject defendant's contention that the statutory language is ambiguous. Rather, the text of N.J.S.A. 2C:7-22 is clear on its face: "[A]ny other corporation, association, or organization" that provides activities or services to minors is a youth serving organization. The broad "any other" language reveals that the list of organizations in the definition is not exhaustive. See Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 80, 122 S. Ct. 2045, 2049-50, 153 L. Ed. 2d 82, 89-90 (2002) (holding that statutory language "may include" indicated non-exclusivity of list that followed); Allstate Ins. Co. v. Malec, 104 N.J. 1, 7-8 (1986) (holding that statutory language "in any

7

of the following ways" did not imply exclusion of all other unnamed ways). Churches clearly fall within the blueprint of the statute and its "any other" language.

The statute's only exemption is "public and nonpublic schools." N.J.S.A. 2C:7-22. The Legislature decidedly and explicitly exempted schools. It chose not to categorically exempt any other type of organization, including religious organizations. We may not read "religious organizations" into the school exemption clause; a court may not rewrite a statute to add language. See State v. Munafo, 222 N.J. 480, 488 (2015); DiProspero, supra, 183 N.J. at 492.

The Legislature's definition of youth serving organization is thus clear and unambiguous. We are bound by that definition. See Febbi, supra, 35 N.J. at 606. Because of that clarity, we need not consider other sections of the statute.

Had the language of the statute been riddled by ambiguity, the legislative history of Megan's Law nevertheless would have guided us to the same conclusion. As stated in the "Findings, Declarations" section of the law, the Legislature's primary objective in enacting Megan's Law was to create a registration system that provided law enforcement officials "with additional information critical to preventing and promptly resolving" incidents of child sexual abuse. N.J.S.A. 2C:7-1. With the 2009 enactment of the youth-serving-organization prohibition,

8

the sponsor's statement made it clear that the purpose of the amendment was to cast a wide net in order to "protect the children and youth of this State by prohibiting sex-offenders from holding positions in youth serving organizations." Sponsor's Statement to S. 532 3 (L. 2009, c. 129). Any ambiguity would have been interpreted in a manner favoring the protection of children to effectuate the statute's legislative intent.

We therefore hold that a youth ministry associated with a religious institution is not categorically excluded from the definition of "youth serving organization" under N.J.S.A. 2C:7-22. We recognize defendant's good-faith effort to comply with the Megan's Law reporting requirements by informing the pastors and elders at ELCC about his convictions. While such disclosure may meet the demands of other reporting sections of Megan's Law, it has no impact on whether the NLYM falls within the definition of youth serving organization. We leave that decision in the jury's capable hands.

### B.

### 1.

We also reject defendant's contention that the Appellate Division's decision in J.B.W. compels the conclusion that the NLYM is not a youth serving organization. In J.B.W., supra, the defendant was subject to the Megan's Law registration

9

requirement because of an earlier conviction for the sexual assault of a victim under the age of eighteen. 434 N.J. Super. at 552-53. After his conviction, the defendant held a position in a high school marching band's pit crew, which worked with the band director and staff to acquire, assemble, store, and transport band equipment. Id. at 553. The defendant was indicted for participating in a youth serving organization, contrary to Megan's Law, and he sought to dismiss the indictment. Id. at 552.

The appellate panel recognized that the pit crew was a committee of a larger association organized for charitable and educational purposes, which included promoting interest in the school's band programs. Id. at 553. The association's membership paid annual dues set by its board of directors. Ibid. It existed independently of, but worked in cooperation with, the school. Ibid.

In determining whether the pit crew was excluded from the definition of youth serving organization, the Appellate Division concluded that the defendant's participation in the pit crew violated Megan's Law because the pit crew was a distinct organization from the school itself, disqualifying it from the school exemption. Id. at 555. The panel explained that the pit crew carried all the indicia of a separate organization and its affiliation with the school did "not make the committee a

10

school." Ibid. The panel found that the definition of youth serving organization encompassed, and did not exclude, such separate organizations. Ibid.

Defendant here argues that, unlike the pit crew, the NLYM does not have its own board of directors and does not maintain separate membership or bylaws from the ELCC. According to defendant the NLYM is part of the ELCC, the ELCC is a religious organization, and religious organizations do not fall within the definition of youth serving organization. Defendant therefore deduces that he is not subject to the statutory restriction.

2.

In its analysis, the J.B.W. panel recognized the structural separation of the marching band's pit crew from the school with which it was affiliated. It was through such a thorough analysis that the panel found the pit crew to be a youth serving organization falling outside the general "school" exemption under the statute. It ably distilled the differences between the school and the pit crew.

Defendant's reliance on J.B.W. is misplaced. Whereas organizations affiliated with schools must be shown to be sufficiently separate from those schools to fall outside the statute's school exclusion, that is not so with organizations affiliated with religious institutions. The Legislature specifically excluded "public and non-public schools" from the

11

definition of youth serving organization but did not provide a similar exclusion for religious or any other type of organization. Finding no specific exclusion for religious organizations, we comfortably rely on the "any other corporation, association or organization" language of the statute to hold that churches and religious organizations fall within, and are not exempted from, the definition of youth serving organization. In this matter, whether the NLYM is a youth serving organization is a question entrusted to the jury.

V.

We briefly comment on the Appellate Division's speculation concerning an issue not raised by the parties regarding N.J.S.A. 2C:7-22 and the Free Exercise Clause of the United States Constitution. "In addressing this and like disputes, we strive to avoid reaching constitutional questions unless required to do so," Comm. to Recall Robert Menendez from the Office of U.S. Senator v. Wells, 204 N.J. 79, 95-96 (2010), because "[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation," Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80 (2006) (per curiam). Here, the constitutional question was neither raised by the parties nor necessary to our analysis. This matter is purely an issue of statutory interpretation and legislative intent.

12

VI.

We reverse the decision of the Appellate Division, reinstate the indictment, and remand to the trial court for proceedings consistent with this opinion.  On remand, it will be a question for the trier of fact whether the NLYM constitutes a youth serving organization.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.