SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## Christine Savage v. Township of Neptune
### (A-2-23) (087229)

**Argued January 17, 2024 -- Decided May 7, 2024**

**RABNER, C.J., writing for a unanimous Court.**

In this appeal, the Court considers whether a "non-disparagement provision" in a settlement agreement can stop parties from revealing details relating to claims of discrimination, retaliation, or harassment.

Plaintiff Christine Savage began her career as a police officer with the Neptune Township Police Department in 1998. In December 2013, she filed a lawsuit against the Department, the Township of Neptune, and others for sexual harassment, sex discrimination, and retaliation, contrary to the Law Against Discrimination (LAD). The parties entered into a settlement agreement in 2014. Savage filed a second action in April 2016 against a number of the same defendants, alleging that they had violated the settlement agreement and engaged in continuing -- and "intensified" -- sex discrimination, harassment, and retaliation.

The parties entered into another settlement agreement in July 2020. Paragraph 10 of the agreement requires in part that the parties agree not to make or cause others to make any statements "regarding the past behavior of the parties" that "would tend to disparage or impugn the reputation of any party. The parties agree that this non-disparagement provision extends to statements, written or verbal, including but not limited to, the news media, radio, television, . . . government offices or police departments or members of the public."

A television news show aired a story about the case and an interview with Savage in August 2020. Defendants contend that Savage violated the non-disparagement provision of the settlement agreement during the interview both through comments she made, such as "you abused me for about 8 years," and comments by the interviewer, such as "Savage says the harassment and retaliation intensified with bogus disciplinary charges."

Defendants filed a motion to enforce the second settlement agreement. The trial court granted the motion, finding that the LAD barred only non-disclosure and

1

confidentiality agreements and that Savage instead violated a non-disparagement clause. The Appellate Division affirmed in part and reversed in part. 472 N.J. Super. 291, 314 (App. Div. 2022). Relying on the definitions of non-disclosure and non-disparagement provisions set forth in Black's Law Dictionary, the appellate court found the parties' non-disparagement clause enforceable but held that Savage had not violated it. Ibid. The Court granted certification. 255 N.J. 284 (2023).

**HELD:** Through N.J.S.A. 10:5-12.8(a), a section of the LAD that was enacted in the wake of the "#MeToo movement," the Legislature removed barriers that previously made it difficult for individuals to report abuse. Survivors of discrimination, retaliation, and harassment now have a legal right to tell their story -- a right that cannot be taken away by a settlement agreement. Because the scope of the agreement in this case would bar individuals from describing an employer's discriminatory conduct, the agreement encompasses speech the LAD protects. The non-disparagement clause in the agreement is against public policy and cannot be enforced.

1. N.J.S.A. 10:5-12.8(a) provides in part that "[a] provision in any employment contract or settlement agreement which has the purpose or effect of concealing the details relating to a claim of discrimination, retaliation, or harassment (hereinafter referred to as a "non-disclosure provision") shall be deemed against public policy and unenforceable against a current or former employee." The law's shorthand reference -- the phrase "non-disclosure provision" -- plainly draws its meaning from the words it refers back to, not from outside sources like Black's Law Dictionary. When the Legislature sets out to define a specific term, as it did here, courts are bound by that definition. As a result, labels like "non-disclosure," which is in the text, or "non-disparagement," which is not, do not control the meaning of section 12.8. The operative terms of N.J.S.A. 10:5-12.8(a) ask whether a provision in an employment contract or a settlement agreement "has the purpose or effect of concealing the details relating to a claim of discrimination, retaliation, or harassment." If it does, the agreement is "against public policy and unenforceable even if the details relating to a claim disparage an employer. (pp. 14-16)

2. The law's structure reinforces the conclusion that it encompasses "non-disparagement" provisions that would conceal details about discrimination claims. Subsection (c) of N.J.S.A. 10:5-12.8 expressly exempts particular types of clauses that might otherwise be barred by the plain language of (a), and the Legislature could have exempted non-disparagement agreements as well. But it did not. Certain language in section 12.8 -- the use of "relating to" and "a" in the phrase "relating to a claim of discrimination" -- also support a broad reading of the statute. And the Court explains how the statute's legislative history, though not needed to understand section 12.8's clear language, reinforces the law's plain meaning. (pp. 16-20)

2

3.  Paragraph 10 of the settlement agreement uses expansive language that encompasses speech about claims of discrimination, retaliation, and harassment. The scope of the agreement -- barring all statements that would tend to disparage a person -- is quite broad. It would prevent employees from revealing information that lies at the core of what section 12.8 protects -- details about claims of discrimination. In that way, the agreement directly conflicts with the LAD. The carveout at the end of paragraph 10 does not save the agreement. The last sentence states that "testimony or statements of Plaintiff related to other proceedings including lawsuits" is not precluded. Section 12.8's protections, however, extend beyond statements made in pleadings or courtrooms. Survivors of discrimination and harassment have the right to speak about their experiences in any number of ways, and they can no longer be restrained by confidentiality provisions in employment contracts or settlement agreements. (pp. 21-22)

4.  The Court reviews defendants' specific objections to comments Savage made in a television interview. All of the challenged comments are protected under section 12.8, but paragraph 10 of the settlement agreement, if enforced, would have the effect of preventing Savage from making any of them. The non-disparagement clause in the settlement agreement conflicts with the LAD in that it encompasses and would bar speech the statute protects. It has the effect of concealing details relating to claims of discrimination, retaliation, and harassment, which is directly contrary to the LAD, and it is therefore against public policy and unenforceable. (pp. 22-25)

5.  The Court provides guidance for remand and explains that it upholds the Appellate Division's conclusion that defendants are not entitled to attorney's fees and costs, albeit for different reasons. (pp. 25-26)

**REVERSED in part, AFFIRMED in part, and REMANDED.**

**JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in CHIEF JUSTICE RABNER's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-2 September Term 2023

087229

Christine Savage,

Plaintiff-Appellant,

v.

Township of Neptune,
Neptune Township Police
Department, Michael J.
Bascom, in an individual and
official capacity, and James M.
Hunt, in an individual and
official capacity,

Defendants-Respondents,

and

Robert Mangold, in an
individual and official capacity,
Michael McGhee, in an
individual and official capacity,
Anthony Gualario, in an
individual and official capacity,
Kevin O'Donnell, in an
individual and official capacity,
Vito Gadaleta, in an
individual and official capacity,
Scott Cox, in an individual
and official capacity, Lewis
Schlosser, and The Institute
for Forensic Psychology,

Defendants.

On certification to the Superior Court, Appellate Division, whose opinion is reported at

472 N.J. Super. 291 (App. Div. 2022).

| Argued | Decided |
|---|---|
| January 17, 2024 | May 7, 2024 |

Donald F. Burke, Jr., argued the cause for appellant (Law Office of Donald F. Burke, attorneys; Donald F. Burke, on the briefs).

John D. McCarthy argued the cause for respondents (Schenck, Price, Smith & King, attorneys; John D. McCarthy and Joseph Maddaloni, Jr., of counsel and on the brief).

Liza B. Fleming, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Angela Cai, Deputy Solicitor General and Mayur P. Saxena, Assistant Attorney General, of counsel, and Liza B. Fleming and Farng-Yi D. Foo, Deputy Attorney General, on the brief).

Andrew Dwyer argued the cause for amicus curiae National Employment Lawyers Association of New Jersey (The Dwyer Law Firm and Bennet D. Zurofsky, attorneys; Andrew Dwyer and Bennet D. Zurofsky, of counsel and on the brief).

Raymond M. Baldino submitted a brief on behalf of amicus curiae New Jersey Education Association (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Raymond M. Baldino, of counsel and on the brief, and Richard A. Friedman, on the brief).

Lauren M. Law submitted a brief on behalf of amicus curiae New Jersey Association for Justice (Folkman Law Offices, attorneys; Lauren M. Law, on the brief).

CJ Griffin submitted a brief on behalf of amicus curiae Libertarians for Transparent Government (Pashman Stein Walder Hayden, attorneys; CJ Griffin, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

In this appeal, we consider whether a "non-disparagement provision" in a settlement agreement can stop parties from revealing details relating to claims of discrimination, retaliation, or harassment.

Here, a sergeant filed a lawsuit that accused the police department where she worked, as well as others, of discrimination, retaliation, and sexual harassment. The parties ultimately entered into a settlement agreement that prevented both sides from "mak[ing] any statements . . . regarding the past behavior of the parties, which . . . would tend to disparage or impugn the reputation of any party."

Afterward, a television reporter interviewed the sergeant, and she commented about the matter. Defendants then filed a motion to enforce the settlement agreement.

We find that the Law Against Discrimination (LAD) protects the sergeant's statements. In particular, N.J.S.A. 10:5-12.8(a) (section 12.8),

3

enacted in 2019 in the wake of the "#MeToo" movement, states that a provision in a settlement agreement that "has the purpose or effect of concealing the details relating to a claim of discrimination, retaliation, or harassment . . . shall be deemed against public policy and unenforceable."

Through those words, the Legislature removed barriers that previously made it difficult for individuals to report abuse. Survivors of discrimination, retaliation, and harassment now have a legal right to tell their story -- a right that cannot be taken away from them by a settlement agreement.

Because the scope of the agreement in this case would bar individuals from describing an employer's discriminatory conduct, the agreement encompasses speech the LAD protects. Defendants also used the agreement to try to hold the sergeant liable for making statements about her claims of discrimination, retaliation, and sexual harassment, which section 12.8 specifically protects. For those reasons, the non-disparagement clause in the agreement is against public policy and cannot be enforced. We therefore reverse in part, and affirm in part, the judgment of the Appellate Division.

I.

We draw certain background facts from the amended complaint plaintiff filed in 2018.

4

Plaintiff Christine Savage began her career as a police officer with the Neptune Township Police Department in 1998. In December 2013, she filed a lawsuit against the Department, the Township of Neptune, and others for sexual harassment, sex discrimination, and retaliation, contrary to the LAD. The parties entered into a settlement agreement in 2014. As part of the settlement, defendants agreed to promote Savage to the rank of sergeant and provide her with access to training.

Savage filed a second action in April 2016 against a number of the same defendants. In an amended complaint, she alleged that defendants violated the settlement agreement and engaged in continuing -- and "intensified" -- sex discrimination, harassment, and retaliation in violation of the LAD, the State Civil Rights Act, and the State Constitution. She asserted that she was "subjected to unfair assessments, arbitrary internal affairs investigations, discriminatory work assignments, discriminatory performance standards and evaluations, and more stringent scrutiny, monitoring and oversight." Among other things, Savage alleged defendants violated department procedures and ordinances "to promote males over females"; failed to train and supervise "employees to ensure compliance with . . . anti-harassment and anti-retaliation" policies; and "fostered a discriminatory, harassing and retaliatory atmosphere."

To settle the second lawsuit, the parties entered into another settlement agreement in July 2020. The second agreement called for plaintiff to remain employed so that she could reach twenty-five years of pensionable service, and for her to receive a total of $248,560.70 for pain and suffering, reimbursement for the purchase of pension credits, and retroactive pay.

Paragraph 10 of the agreement is central to this appeal. It reads in part as follows:

> The parties agree not to make any statements written or verbal, or cause or encourage others to make any statements, written or verbal regarding the past behavior of the parties, which statements would tend to disparage or impugn the reputation of any party. The parties agree that this non disparagement provision extends to statements, written or verbal, including but not limited to, the news media, radio, television, . . . government offices or police departments or members of the public.

> [(emphasis added).]

The trial court dismissed the case as settled on July 24, 2020.

A television news show, NBC 4 New York, aired a story about the case on August 11, 2020. The segment included a recent interview news reporter Sarah Wallace conducted with Savage, as well as a short clip from a prior interview. Defendants contend that Savage violated the non-disparagement provision of the settlement agreement during the interview.

6

The content of the interview appears below. Defendants challenge the underlined passages; passages in italics are from the earlier interview, which pre-dated the settlement agreement.

> Reporter (introducing segment): We have an I-Team exclusive update tonight. A major win for a former police sergeant who sued Neptune Township in central New Jersey for sex discrimination. Now a settlement. Investigative reporter Sarah Wallace has covered the legal battle for years and joins us now with details of a closing chapter.
>
> Savage: I feel vindicated.
>
> Wallace: Neptune Township's only female police sergeant, Christine Savage, claiming a legal victory. The 46-year-old agreeing to settle a contentious sexual discrimination lawsuit which she first filed against her superiors in 2013.
>
> Savage: My integrity's intact and I get to keep my rank, you couldn't fire me, you couldn't demote me, you abused me, you abused me for about 8 years.
>
> Wallace: Savage says the harassment and retaliation intensified with bogus disciplinary charges.
>
> Savage: I never asked for special treatment, I just asked for the same treatment.
>
> Wallace: In 2018, she was put on unpaid leave after being found unfit for duty during a psych exam. The sergeant claims it was a set up.
>
> *Savage: They wouldn't tell me what it was that determined me unfit.*

7

Wallace:  She spoke out then for the first time to the I-Team.

*Savage:  I'm being financially choked out.*

Wallace:  Savage fought back in court.  The result, one hearing after another, and a back and forth series of other psych exams.

Savage:  But I passed 5 fitness for duties, 5, and at no point in time was I put back to work.

Wallace:  She never got back in uniform, but the Township finally agreed to put her back on the payroll and then a settlement offer for this veteran who will retire with 25 years on the job, with full benefits, back pay and all disciplinary charges dismissed.  The Township denies any improper conduct.

Wallace:  What do you say to other whistleblowers?

Savage:  Stand your ground.  Don't submit.

Wallace:  I've seen the toll it has taken on you over the years.  Was it worth it?

Savage:  It is worth it.  If you have the integrity, and the strength to stand your ground and stand up for what's right then that's worth its weight in gold.

Wallace:  But Savage also believes women will continue to face an uphill battle for equal promotions within her department.

Savage:  I really don't think you're ever going to see another female sergeant, lieutenant, captain or above.

Wallace:  Because?

8

> Savage: <u>Because we're oppressed. They don't want women there.</u>
>
> Wallace: Has it not changed?
>
> Savage: <u>It has not changed, not for a minute. It's not gonna change, it's the good ol' boy system.</u>

Several weeks after the interview aired, defendants filed a motion to enforce the second settlement agreement. The trial court granted the motion.

The court found the LAD barred only non-disclosure and confidentiality agreements, and that Savage instead violated a non-disparagement clause, which was enforceable. The court ordered Savage to "abide by the non-disparagement clause" and "directed [her] to refrain from making any further statements, or conducting any further interviews, which disparage the Defendants in violation of the settlement agreement." The court denied defendants' request for $23,206.38 in damages but awarded defendants $4,917.50 in counsel fees and costs. The trial court denied Savage's cross-motion for counsel fees and costs.

The Appellate Division affirmed in part and reversed in part. <u>Savage v. Township of Neptune</u>, 472 N.J. Super. 291, 314 (App. Div. 2022). It held that the non-disparagement clause was enforceable but that Savage had not violated it. <u>Ibid.</u>

9

The court's opinion rested on its interpretation of N.J.S.A. 10:5-12.8(a), which states that a provision in a settlement agreement that "has the purpose or effect of concealing the details relating to a claim of discrimination, retaliation, or harassment (hereinafter referred to as a 'non-disclosure provision') shall be deemed against public policy and unenforceable." The appellate court observed that the statute's plain language applies to "nondisclosure provision[s]," but not to "non-disparagement provisions." Id. at 307. Although the court recognized "there can be some overlap" between the two, id. at 310, it concluded they were different concepts, id. at 307.

For support, the Appellate Division looked to Black's Law Dictionary, which defined "[a] nondisclosure or confidentiality clause [as] a 'clause prohibiting the parties to an agreement from disclosing to nonparties the terms of the agreement and, often, anything related to the formation of the agreement.'" Ibid. (quoting Black's Law Dictionary 315 (11th ed. 2019)). "In contrast," the court observed, "a non-disparagement clause is a 'contractual provision prohibiting the parties from publicly communicating anything negative about each other.'" Ibid. (quoting Black's Law Dictionary 315).

The court concluded, in essence, that "[t]he Legislature could have, but did not, prohibit the enforcement of non-disparagement provisions." Id. at 308. In the appellate court's view, the legislative history likewise "did not

10

address non-disparagement provisions." Id. at 309.  As a result, the court found the non-disparagement provision was enforceable.  Id. at 310.

Parsing the statements made in the interview, however, the Appellate Division held they did not violate the provision.  Id. at 314.  The court found that Savage's comments toward the end of the interview were "about present or future behavior," not "past behavior," and that the "plain language of the agreement" barred only the latter.  Id. at 313-14.

Accordingly, the Appellate Division vacated the award of counsel fees and costs to defendants and affirmed the trial court's order denying counsel fees and costs to plaintiff.  Id. at 314.

We granted Savage's petition for certification.  255 N.J. 284 (2023).  We also granted leave to the Attorney General, the New Jersey Association for Justice (NJAJ), the New Jersey Education Association (NJEA), and Libertarians for Transparent Government (LTG) to participate as friends of the court.  The National Employment Lawyers Association of New Jersey (NELA) first appeared before the Appellate Division as an amicus and has remained in the case.  See R. 1:13-9(d).

## II.

Savage argues that the Appellate Division's analysis is flawed.  She submits that by focusing on the label used in the settlement agreement in this

11

case -- "non-disparagement provision" -- instead of the clause's purpose and effect, the appellate court mistakenly upheld a provision that will "allow[] employers to silence victims of discrimination, retaliation or harassment through" the use of similar non-disparagement clauses. According to Savage, that outcome would violate the LAD and the express language in section 12.8.

Defendants ask the Court to uphold the Appellate Division's ruling. They contend that section 12.8 does not apply here because it only addresses non-disclosure provisions and neither addresses nor prohibits non-disparagement clauses. In addition, defendants maintain that Savage "blatantly ignored the non-disparagement clause during" the interview with NBC News. Defendants also submit that eliminating non-disparagement clauses "would discourage settlement by both employers and employees."

Amici all support Savage's position. They argue that the LAD bars any clause in a settlement agreement that has the purpose or effect of concealing details relating to claims of discrimination, retaliation, or harassment, regardless of the label attached to the clause. And they contend the non-disparagement clause in this case has that very purpose and effect.

Amici also point to section 12.8's legislative history for support. The NJAJ contends the amendment to the LAD was meant "to end provisions in settlement agreements used to silence and intimidate survivors of sexual

harassment." If the non-disparagement clause is upheld, the NJEA submits, "employers will simply switch" from "non-disclosure" to "non-disparagement" provisions to "continue the cycle of buying silence" the Legislature "sought to end." The Attorney General adds that because the Division on Civil Rights is charged with enforcing the LAD, its interpretation of the law is entitled to great weight.

III.

A.

In this case of statutory interpretation, our review is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 181 (2024). To interpret the meaning of a statute, courts seek "to determine and give effect to the Legislature's intent." In re Registrant H.D., 241 N.J. 412, 418 (2020) (quoting DYFS v. A.L., 213 N.J. 1, 20 (2013)). The "'best indicator' of legislative intent" is typically the plain language of the statute. W.S. v. Hildreth, 252 N.J. 506, 518 (2023) (quoting State v. Lane, 251 N.J. 84, 94 (2022)). We also read each part of a statute "in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005).

If the plain language of a statute is clear, our task is complete. If the text is ambiguous, we can turn to extrinsic evidence including relevant legislative history for guidance. Sanjuan v. Sch. Dist. of W. N.Y., 256 N.J. 369, 379

13

(2024) (citing <u>DiProspero</u>, 183 N.J. at 492-93). But we do not generally consider proposed legislation that was not enacted to interpret a statute. <u>State v. O'Donnell</u>, 255 N.J. 60, 79 (2023).

### B.

This case turns on the meaning of a section in New Jersey's Law Against Discrimination. The LAD is remedial legislation that must "be liberally construed." N.J.S.A. 10:5-3. Its overarching purpose is to eradicate discrimination in society. <u>Nini v. Mercer Cnty. Cmty. Coll.</u>, 202 N.J. 98, 115 (2010). Among other reasons, it was enacted "to protect the public's strong interest in a discrimination-free workplace." <u>Lehmann v. Toys 'R' Us, Inc.</u>, 132 N.J. 587, 600 (1993). "Because discrimination is still a pervasive problem in the modern workplace," arguments "advanced by victims of workplace discrimination" require careful attention in order to give effect to the Legislature's intent. <u>Smith v. Millville Rescue Squad</u>, 225 N.J. 373, 390-91 (2016).

### C.

The proper starting point is the plain language of the statute. N.J.S.A. 10:5-12.8(a) provides as follows:

> <u>A provision in any employment contract or settlement agreement which has the purpose or effect of concealing the details relating to a claim of discrimination, retaliation, or harassment</u> (hereinafter

14

referred to as a "non-disclosure provision") shall be deemed against public policy and unenforceable against a current or former employee (hereinafter referred to as an "employee") who is a party to the contract or settlement. If the employee publicly reveals sufficient details of the claim so that the employer is reasonably identifiable, then the non-disclosure provision shall also be unenforceable against the employer.

[(emphasis added).]

Subsection (c) exempts non-competition clauses and agreements not to disclose trade secrets or proprietary information from the above rule; in other words, those clauses can be included in settlement agreements. N.J.S.A. 10:5-12.8(c).

The text of the statute reveals its meaning and scope. The law's critical language -- highlighted in the first sentence above -- bars provisions in settlement agreements that have "the purpose or effect of concealing the details relating to a claim of discrimination, retaliation, or harassment." N.J.S.A. 10:5-12.8(a). The statute then uses a shorthand reference -- the phrase "non-disclosure provision" -- for that key language. The phrase plainly draws its meaning from the words it refers back to -- not from outside sources like Black's Law Dictionary.

"When the Legislature sets out to define a specific term," as it did here, "'courts are bound by that definition.'" State v. S.B., 230 N.J. 62, 68 (2017) (quoting Febbi v. Bd. of Rev., 35 N.J. 601, 606 (1961)); see also Van Buren v.

15

United States, 593 U.S. 374, 387 (2021) ("When 'a statute includes an explicit definition' of a term, 'we must follow that definition, even if it varies from a term's ordinary meaning.'" (citation omitted)). As a result, labels like "non-disclosure," which is in the text, or "non-disparagement," which is not, do not control the meaning of section 12.8. Instead, the language the Legislature used tells us what the law means.

Our focus, therefore, belongs on the law's operative terms, which ask whether a provision in an employment contract or a settlement agreement "has the purpose or effect of concealing the details relating to a claim of discrimination, retaliation, or harassment." N.J.S.A. 10:5-12.8(a). If it does, the agreement is "against public policy and unenforceable." Ibid. That is true even if the details relating to a claim disparage an employer.

In theory, parties can agree not to disparage one another by disclosing information that has nothing to do with "details relating to . . . claim[s] of discrimination, retaliation, or harassment." See ibid. For example, parties could agree not to disclose details about their personal lives or matters unrelated to a discrimination claim -- like "my employer drinks heavily at work" or "cheats on his taxes." Such an agreement, however, would have to be narrowly drawn to ensure that details relating to the claims listed in section 12.8 could be revealed publicly.

16

The law's structure reinforces the conclusion that it encompasses "non-disparagement" provisions that would conceal details about discrimination claims. Subsection (c) of N.J.S.A. 10:5-12.8 expressly exempts particular types of clauses that might otherwise be barred by the plain language of (a): (1) non-competition provisions, and (2) agreements not to disclose proprietary information -- "trade secrets, business plan and customer information." The Legislature could have exempted non-disparagement agreements as well. But it did not. See S.B., 230 N.J. at 69 (declining to add exemptions the Legislature "decidedly and explicitly . . . chose not to" include in a statute); see also 2A Norman J. Singer, Sutherland Statutory Construction § 47.11 (7th ed. 2014) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exceptions." (quotation omitted)).

Certain language in section 12.8 also supports a broad reading of the statute. Section 12.8 bars the concealment of details "relating to" a claim of discrimination, retaliation, or harassment. Ibid. (emphasis added). "The ordinary meaning of [the phrase 'relating to'] is a broad one -- to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) (quotation and quotation marks omitted).

17

Section 12.8, in addition, protects the disclosure of "details relating to <u>a</u> claim of discrimination, retaliation, or harassment." (emphasis added). The word "a" does not distinguish between claims that give rise to a settlement agreement and others that do not. Nor does it distinguish among past, present, or future claims. The statute encompasses them all. See <u>Villa v. Short</u>, 195 N.J. 15, 26 (2008) (holding that the phrase "an insured" in an insurance policy refers to "all insureds"); <u>see also</u> <u>Allstate Ins. Co. v. Stamp</u>, 588 A.2d 363, 365 (N.H. 1991) (finding that the "use of the indefinite article 'an,' rather than the definite 'the,' before 'insured' is a clear reference to <u>any</u> insured").

For all of those reasons, we find that the meaning of section 12.8 turns on what the law says, not on any labels applied to it, and that the statute has a broad reach.

D.

The statute's legislative history, though not needed to understand section 12.8's clear language, <u>see</u> <u>DCPP v. D.C.A.</u>, 256 N.J. 4, 19 (2023), reinforces the law's plain meaning. Section 12.8 was enacted in the wake of the "#MeToo" movement[1] to protect individuals who suffer sexual harassment,

---

[1] "'MeToo' was first coined in 2006 . . . as the name for a movement to help victims of sexual harassment and assault. #MeToo catapulted into the public's consciousness in October 2017' when <u>The New York Times</u> published an article 'detailing decades of sexual harassment allegations against the

18

retaliation, and discrimination from being silenced by settlement agreements and employment contracts.

In describing Senate Bill 121, later codified as N.J.S.A. 10:5-12.8, the bill's principal sponsor, Senator Loretta Weinberg, stated that

> [a]n important step in delivering meaningful reform is the legislation that would make non-disclosure agreements in cases of sexual assault and sexual harassment unenforceable against employees who are survivors. These non-disclosure agreements have been used to silence and intimidate survivors of sexual assault and harassment as well as victims of discrimination and retaliation. Limiting these so-called confidentiality agreements will help eliminate the secrecy that too often allows abuses to continue. It should no longer be appropriate to buy forced silence that further victimizes assault survivors.
>
> [Savage, 472 N.J. Super. at 309 (quoting Letter from Sen. Loretta Weinberg to the 67 Women Who Spoke Out in Support of Legislative Hearings that Support Sexual Assault Victims and Lead to Meaningful Reforms, at 1 (Feb. 20, 2019)).]

The sponsor's statement in support of the legislation stated the bill would "bar certain agreements that conceal details relating to discrimination claims." Sponsor's Statement to S. 121 3 (L. 2019, c. 39). At a meeting of the

---

Hollywood producer Harvey Weinstein.'" King v. Minnesota, 39 F.4th 979, 983 n.2 (8th Cir. 2022) (quoting Elliott v. Donegan, 469 F. Supp. 3d 40, 51 (E.D.N.Y. 2020)).

Senate Labor Committee, Senator Weinberg expanded upon the purpose of the bill: to hinder "the ability, particularly of big companies, who . . . might be dealing with their own executives," to keep "each agreement confidential, giv[e] some kind of a payoff to the plaintiff, and then let[] that same person move on and repeat that egregious behavior time and time again." Meeting of the S. Labor Comm. (Mar. 5, 2018), at 1:32:05 to :32 (statement of Sen. Weinberg on S. 121), https://www.njleg.state.nj.us/archived-media/2018/SLA-meeting-list/media-player?committee=SLA&agendaDate=2018-03-05-10:00:00&agendaType=M&av=A. The proposed bill, Senator Weinberg added, is "not about collecting payments. It is about stopping this behavior, and the only way we will do that is to make sure that each time this occurs, it will not be done in the dark of night, and the perpetrator will not be free to do it again and again." Id. at 1:33:15 to :43.

Amici also point to proposed amendments to section 12.8 that would add -- and bar -- "non-disparagement" provisions. See A. 4521 (Sept. 22, 2022). We cannot, however, rely on "attempts to amend a statute in order to interpret it." O'Donnell, 255 N.J. at 79.

20

IV.

A.

Paragraph 10 of the settlement agreement uses expansive language that encompasses speech about claims of discrimination, retaliation, and harassment. The clause reads in full as follows:

> 10. The parties agree not to make <u>any statements</u> written or verbal, or cause or encourage others to make any statements, written or verbal regarding the past behavior of the parties, which statements <u>would tend to disparage or impugn the reputation of any party</u>. The parties agree that this <u>non disparagement provision</u> extends to statements, written or verbal, including but not limited to, the news media, radio, television, internet postings of any kind, blogs, social media, (e.g., Facebook, Instagram, Twitter, or the like), consumer or trade bureaus, other state, county or local government offices or police departments or members of the public. Neptune Township will respond to inquiries from prospective employers with dates of employment and positions held. The parties agree that non-disparagement is a material term of this Agreement and that in the event of a breach, the non-breaching party may seek enforcement of the non-disparagement provision and damages for its breach, and that the filing of any such action would not be deemed a breach of this Agreement. Nothing herein shall be construed as prohibiting or precluding in any way testimony or statements of Plaintiff related to other proceedings including lawsuits.
>
> [(emphases added.)]

The scope of the agreement -- barring all statements that would tend to disparage a person -- is quite broad. To accuse someone of misconduct is to

21

disparage them. To provide details about allegations of discrimination, retaliation, or sexual harassment by an employer, then, would naturally "tend to disparage or impugn" the employer's "reputation." The agreement, therefore, encompasses and would prevent employees from revealing information that lies at the core of what section 12.8 protects -- details about claims of discrimination. In that way, the agreement directly conflicts with the LAD.

The carveout at the end of paragraph 10 does not save the agreement. The last sentence of the paragraph states that "testimony or statements of Plaintiff <u>related to other proceedings including lawsuits</u>" is not precluded. (emphasis added). Section 12.8's protections, however, extend beyond statements made in pleadings or courtrooms. Survivors of discrimination and harassment have the right to speak about their experiences in any number of ways, and they can no longer be restrained by confidentiality provisions in employment contracts or settlement agreements.

B.

Defendants' specific objections to comments Savage made in a television interview make clear how the settlement agreement in this case runs afoul of the LAD. Defendants also challenge comments the reporter made,

22

presumably relying on language in the settlement agreement that bars Savage from "caus[ing] or encourag[ing] others to make" disparaging comments.

Defendants challenge two types of comments that Savage made. Some relate directly to her discrimination, retaliation, and harassment claims; others relate more generally or indirectly to those claims. Both are protected. Section 12.8 extends to "details relating to a claim of discrimination," not just details that relate "directly" to such a claim. N.J.S.A. 10:5-12.8(a).

The following comments that defendants challenge relate to Savage's claims of discrimination, retaliation, or harassment:

*"[Y]ou abused me, you abused me for about 8 years."

*"Savage says the harassment and retaliation intensified with bogus disciplinary charges."

*"In 2018, she was put on unpaid leave after being found unfit for duty during a psych exam. The sergeant claims it was a set up."

*"I'm being financially choked out." [This statement was made during a prior interview.]

Other comments defendants challenge relate more generally to Savage's claims:

*"Savage also believes women will continue to face an uphill battle for equal promotions within her department."

23

\*"Because we're oppressed.  They don't want women there."

\*"It has not changed, not for a minute.  It's not gonna change, it's the good ol' boy system."

The above statements are all protected under the LAD.  Certain comments relate to allegations in Savage's complaint.  <u>See, e.g.</u>, First Am. Compl., ¶¶ 47, 95 (discrimination); ¶¶ 48, 95 (retaliation); ¶¶ 40, 47, 95 (harassment).  Some statements, in fact, mirror specific allegations in the complaint.  <u>See, e.g.</u>, <u>id.</u> ¶ 57 (asserting the Police Chief stated "'this is a male dominated field' and it is 'not going to change'"); ¶¶ 84, 89, 92 (asserting that promotions were designed to "maintain the 'old boys' network'" and that men received favored treatment); ¶¶ 130, 132 (placement on unpaid leave).  Although the comments are therefore protected under section 12.8, paragraph 10 of the settlement agreement, if enforced, would have the effect of preventing Savage from making any of them.

We note as well that paragraph 10 barred statements relating only to "the <u>past behavior</u> of the parties."  (emphasis added).  Had the settlement agreement survived scrutiny, defendants could not have relied on it to challenge comments about present or future events.

We find that the non-disparagement clause conflicts with the LAD in that it encompasses and would bar speech the statute protects -- "details relating to a claim of discrimination, retaliation, or harassment." N.J.S.A. 10:5-12.8(a). Defendants also used the settlement agreement to attempt to get monetary damages from Savage for making statements about claims of discrimination, retaliation, and sexual harassment she had already filed. In addition, defendants, in effect, sought to enjoin her from making further statements about those claims.

The effect of this non-disparagement clause, therefore, is to conceal details relating to claims of discrimination, retaliation, and harassment, which is directly contrary to the LAD. See ibid. For those reasons, we hold that the non-disparagement clause in the settlement agreement is against public policy and unenforceable.

In light of our findings under the LAD, we decline to consider arguments related to the National Labor Relations Act or the First Amendment, which certain amici advance.

V.

In sum, we find that paragraph 10 of the settlement agreement is against public policy and cannot be enforced. To the extent any limitations remain in

place on what Savage may say about her claims of discrimination, retaliation, or harassment, they are lifted.

We also remand the matter to the trial court to allow Savage to apply for reasonable attorney's fees and costs consistent with N.J.S.A. 10:5-12.9. The trial court previously denied her application, and the Appellate Division affirmed that order. We uphold the Appellate Division's conclusion that defendants are not entitled to attorney's fees and costs, albeit for different reasons that are outlined above.

The judgment of the Appellate Division is reversed in part and affirmed in part, and the matter is remanded to the trial court for further proceedings.

JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in CHIEF JUSTICE RABNER's opinion.

26