**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0925-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

S.B.,

    Defendant-Appellant.

_____

Submitted March 27, 2025 – Decided April 9, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 14-09-0629.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven E. Braun, Designated Counsel, on the brief).

John P. McDonald, Somerset County Prosecutor, attorney for respondent (Alyssa N. Biamonte, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant S.B.[1] appeals from the November 3, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

We previously discussed the underlying facts and procedural history of defendant's case when we affirmed his conviction and sentence. State v. S.B., No. A-1235-19 (App. Div. Apr. 27, 2021) (slip op. at 2-14). We include a summary of the facts for purposes of addressing defendant's arguments.

Defendant has two prior convictions for sexually assaulting teenagers and is an "excluded sex offender" subject to the provisions of Megan's Law, N.J.S.A. 2C:7-1 to -23, which include prohibitions on his interaction with children. Specifically, N.J.S.A. 2C:7-23(a) provides "it shall be unlawful for an excluded sex offender to hold a position or otherwise participate . . . in a youth serving organization."[2]

---

[1]  We use initials to identify defendant to protect the identities of victims of sexual offenses. R. 1:38-3(c)(12).

[2]  "'Youth serving organization' means a sports team, league, athletic association or any other corporation, association or organization . . . which provides recreational, educational, cultural, social, charitable[,] or other activities or services to persons under [eighteen] years of age." N.J.S.A. 2C:7-22.

Defendant was a member of the Eternal Life Christian Center (ELCC), a non-profit, religious institution, and participated in ELCC's No Limits Youth Ministry (youth ministry). The youth ministry's mission was "to prepare students to be effective" at home and in school. It was created to provide church members between the ages of twelve and seventeen with spiritual education, social, and recreational activities. These activities included weekly bible study meetings, and trips to movies, amusement parks, concerts, and overnight camp retreats.

From 2009 through 2014, defendant was a youth leader and mentor for the young participants in the youth ministry. As a youth leader, defendant supervised weekly meetings and acted as a chaperone on trips and offsite camp retreats. While chaperoning the camps, defendant would sleep in the same quarters as the young male participants.

On August 6, 2014, defendant was arrested and charged with participating in a youth serving organization. On September 17, he was indicted for third-degree prohibited participation in a youth serving organization, N.J.S.A. 2C:7-23(a).

Defendant moved to dismiss the indictment arguing the youth ministry was not a youth serving organization as contemplated by N.J.S.A. 2C:7-22. On

3

June 25, 2015, the trial court granted his motion and dismissed the indictment. On March 22, 2016, we affirmed. On July 20, 2017, our Supreme Court reversed and remanded for further proceedings. State v. S.B., 230 N.J. 62, 72 (2017). The Court held "a religious institution is not categorically excluded from the definition of 'youth serving organization' under N.J.S.A. 2C:7-22." Id. at 70. "On remand, it will be a question for the trier of fact whether the [youth ministry] constitutes a youth serving organization." Id. at 72.

On remand, the court granted defendant's motion to waive his right to a jury trial and conducted a bench trial from April 29 to May 2, 2019. At trial, defendant stipulated he was an "excluded sex offender." He argued the youth ministry was not a youth serving organization as defined in N.J.S.A. 2C:7-22, and he did not "knowingly" participate in such an organization.

Lieutenant Gerard Clyne of the North Plainfield Police Department testified for the State. After N.J.S.A. 2C:7-23 was enacted in 2009, he was responsible for providing Megan's Law registrants with the form "Notice of Prohibition from Participation in Youth Serving Organization" and having them sign the form. The form stated registrants were prohibited by statute from being involved with a youth serving organization.

4

On November 20, 2012, he met with defendant to have him sign the form. Lieutenant Clyne read the entire form to defendant. It included language from the statute explaining the prohibition against participation in a youth serving organization and the statutory definition of a youth serving organization. In addition to reading the form to defendant verbatim, he told defendant the statute "basically bans you from working with kids." Lieutenant Clyne asked defendant if he had any questions about the form. Defendant appeared to understand the form and did not ask any questions. He did not mention his participation with the youth ministry.

Sergeant Richard Evans of the Hillsborough Township Police Department testified that in 2014, he was responsible for registering sex offenders pursuant to Megan's Law. Defendant moved to Hillsborough that year and on April 1, 2014, met with Sergeant Evans at police headquarters to complete the registration process, which included review of the form notice of the prohibition on participation in a youth serving organization.

Sergeant Evans "explained the form to defendant and informed him he could not 'have any interactions with organizations or groups involving kids.'" S.B., slip op. at 9. He "read the entire form to defendant, pausing to ask if he understood the definition of a youth serving organization. Defendant said he

understood the definition and signed the form." Id. at 9. Defendant did not ask any questions about the form, nor did he mention his participation with the youth ministry.

Glenn Solomon, an ELCC board member, testified that in 2005, after reviewing defendant's file, the board decided to adopt policies prohibiting defendant from being involved with the youth ministry and being alone with any of the youth members. Defendant was informed of the board's decision, and he complied with the board's restrictions from 2005 to 2008.

Solomon testified, however, that between 2008 and 2010, ELCC went through what he described as a chaotic leadership transition. During this time, ELCC had multiple pastors as well as new board members. According to Solomon, the board's policies regarding defendant's involvement with the youth ministry and youth members were not enforced, and defendant again began to participate actively in the youth ministry.

Defendant did not testify. Daryl Perkins, the senior pastor at ELCC beginning in 2008, testified for defendant. Perkins testified ELCC was organized into different ministries, which were essentially programs. ELCC had programs for young adults and teenagers, and each program had a volunteer facilitator or leader. The youth ministry was a recognized part of ELCC.

A-0925-23

At some point after Perkins became senior pastor, the executive board called a special meeting to remove defendant from the board based on information in a file, which Perkins could not recall. He said the purpose of the file was to show defendant had a history of inappropriate sexual contact. Perkins spoke with defendant, and he confirmed his criminal history.

Perkins did not remove defendant from the board because he did not believe there was any basis for doing so. He stated, however, that the board placed restrictions on defendant's interaction with youth. Perkins explained defendant was not allowed to be in any facility with females under the age of eighteen, unless another adult was present. Perkins reviewed the restrictions with defendant.

"Perkins testified . . . defendant was involved in numerous church activities, and he had responsibilities related to the youth ministry. He noted . . . the youth ministry conducted 'enrichment camps,' and defendant was one of the persons who went to the camps. Defendant also would attend youth group meetings at the church." S.B., slip op. at 12.

On May 21, 2019, the court entered an order finding defendant guilty supported by an oral opinion. The court found, based on the evidence and testimony presented at trial, the youth ministry was a youth serving organization

7

as defined in N.J.S.A. 2C:7-22. The court also found that after the enactment of N.J.S.A. 2C:7-23, defendant was twice made aware of the statutory prohibition on his participation in a youth serving organization. Despite those notifications, defendant continued to participate as a leader and chaperone of the youth ministry. The court concluded the State proved beyond a reasonable doubt defendant knowingly participated in a youth serving organization in violation of N.J.S.A. 2C:7-23.

On September 29, 2019, the court sentenced defendant to five years in prison, consecutive to a sentence he was already serving for a prior conviction in Middlesex County. We affirmed his conviction and sentence.

We determined the State was required to prove, beyond a reasonable doubt, the youth ministry was a youth serving organization as defined, and defendant knowingly participated in the youth ministry. "However, the State was not required to prove defendant knew, in fact, that [the youth ministry] met the definition of a youth serving organization under the statute." S.B., slip op. at 19. Defendant did not seek certification.

Defendant timely filed a pro se petition for PCR. He contended "Perkins told [him] that after the [church's] lawyers did a check[,] they came back to him and said that there was no legal reason why [he] could not volunteer[] at the

church."  Defendant argued counsel was ineffective for failing to question Perkins about that legal advice.  He argued counsel failed to conduct an adequate investigation and adequately research the law and, had counsel done so, "he would have uncovered information that would have had a major impact on [his] case."  Also, counsel should have cross-examined witnesses "at length" to impeach their credibility and "elicit from the witnesses all of the inconsistencies in their statements."

After PCR counsel was appointed, defendant filed a supplemental brief in support of PCR.  He argued trial counsel was ineffective for:  (1) failing to pursue a speedy trial; (2) "the apparent failure . . . to take even the minimal preparatory step of investigating . . . Perkins and for not questioning him thoroughly"; (3) conducting ineffective cross-examination of the State's witnesses; and (4) failing to communicate with defendant and obtain discovery. He also argued appellate counsel was ineffective "[t]o the extent . . . [c]ounsel could have raised these issues as error."

Following oral argument, the PCR court entered an order denying defendant's petition supported by a written opinion.  The PCR court found defendant failed to articulate "specific facts sufficient to constitute a prima facie case of ineffective assistance of counsel" or "specific instances where

[counsel's] trial strategy decisions were ineffective." It rejected defendant's claim counsel failed to assert his right to a speedy trial because resolution of his case was delayed by the appellate process and "counsel did[,] in fact[,] satisfy [defendant's] request for a 'speedy resolution' by requesting a bench trial." In addition, defendant "failed to . . . demonstrate how he was prejudiced" by the delay.

On appeal, defendant raises the following arguments for our consideration.

> POINT I
>
> DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL DEFENSE COUNSEL . . . .
>
> > A. Trial defense counsel was ineffective by failing to move for speedy trial.
> >
> > B. Defendant asserts his trial defense counsel was ineffective by failing to conduct an adequate investigation into his case.
> >
> > C. Trial defense counsel was ineffective by his less than skillful cross-examination of the witnesses.
> >
> > D. Defendant asserts that his trial defense counsel was ineffective because he failed to communicate with defendant and failed to obtain discovery.

10

APPELLATE DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE SPEEDY TRIAL ISSUE . . . .

We affirm substantially for the reasons set forth in the PCR court's written opinion and add the following comments.

Because the court did not hold an evidentiary hearing, we review both the factual inferences drawn by the judge from the record and the judge's legal conclusions de novo. State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020) (citing State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018)).

To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," then by proving [they] suffered prejudice due to counsel's deficient performance. Strickland, 466 U.S. at 687; accord Fritz, 105 N.J. at 52. Defendant must show by a "reasonable probability" the deficient performance affected the outcome of the proceeding. Fritz, 105 N.J. at 58.

A defendant bears the burden of establishing a prima facie claim for PCR. State v. Gaitan, 209 N.J. 339, 350 (2012). Defendants "must do more than make bald assertions that [they were] denied the effective assistance of counsel" to establish a prima facie claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990) (citing Strickland, 466 U.S. at 688).

There is a strong presumption counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Further, because prejudice is not presumed, the defendant must demonstrate "how specific errors of counsel undermined the reliability of the" proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984); see also Fritz, 105 N.J. at 52 ("[P]rejudice must be proved . . . it is not presumed."). "The test is not whether defense counsel could have done better, but whether [they] met the constitutional threshold for effectiveness." State v. Nash, 212 N.J. 518, 543 (2013) (citing Fritz, 105 N.J. at 52). The court should review counsel's performance in the context of the evidence against defendant at the time of the plea or trial. State v. Castagna, 187 N.J. 293, 314-15 (2006).

Counsel may be deficient for "fail[ure] to conduct an adequate pre-trial investigation." State v. Porter, 216 N.J. 343, 352-53 (2013) (citing State v. Preciose, 129 N.J. 451, 464 (1992)). Where a defendant alleges counsel rendered ineffective assistance by "inadequately investigat[ing] his case," the defendant "must assert the facts that an investigation would have revealed, supported by affidavits or certifications upon the personal knowledge of the affiant or the person making the certification." Id. at 353 (quoting Cummings, 321 N.J. Super. at 170); accord R. 3:22-10(c).

The same standard applies to a defendant's claims of ineffective assistance by appellate counsel. State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007) (citing State v. Morrison, 215 N.J. Super. 540, 546 (App. Div. 1987)). To obtain a new trial based on ineffective assistance of appellate counsel, it must be established that appellate counsel failed to raise an issue that would have constituted reversible error on direct appeal. See State v. Echols, 199 N.J. 344, 361 (2009). Appellate counsel will not be found ineffective if counsel's failure to appeal the issue could not have prejudiced the defendant because the appellate court would have found either that no error had occurred or that it was harmless. State v. Reyes, 140 N.J. 344, 365 (1995); see also State v. Harris, 181 N.J. 391, 499 (2004).

A defendant is entitled to an evidentiary hearing if they present a prima facie case supporting PCR, the court determines there are material issues of fact that cannot be resolved based on the existing record, and the court finds an evidentiary hearing is required to resolve the claims presented. See Porter, 216 N.J. at 354 (citing R. 3:22-10(b)).

We are satisfied the PCR court properly denied defendant's petition for PCR without conducting an evidentiary hearing. The PCR court correctly determined defendant's claim counsel was ineffective for failing to assert his right to a speedy trial lacks merit.

"The Sixth Amendment protects a defendant's right to a speedy trial after arrest or indictment." State v. May, 362 N.J. Super. 572, 595 (App. Div. 2003) (quoting State v. Long, 119 N.J. 439, 469 (1990)). "[T]he right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." Barker v. Wingo, 407 U.S. 514, 515 (1972).

As set forth in Barker and subsequently adopted by our Supreme Court in State v. Szima, 70 N.J. 196, 200-01 (1976), a four-part test is applied to determine when a violation of a defendant's speedy-trial rights contravenes due process. The test requires courts to "consider and balance the '[l]ength of delay, the reason for the delay, the defendant's assertion of [their] right, and prejudice

to the defendant.'"  State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009) (first alteration in original) (quoting Barker, 407 U.S. at 530).

"No single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial."  Id. at 10 (citing Barker, 407 U.S. at 533).  Moreover, our Supreme Court has "decline[d] to adopt a rigid bright-line try-or-dismiss rule," instead continuing its commitment to "a case-by-case analysis" under the Barker balancing test; it has acknowledged "that facts of an individual case are the best indicators of whether a right to a speedy trial has been violated."  State v. Cahill, 213 N.J. 253, 270-71 (2013).

When a delay exceeds one year, it is considered presumptively prejudicial; such a delay triggers analysis of all the Barker factors.  Id. at 265-66.  We have previously cautioned, however, against deciding "how long is too long . . . 'by sole reference to the lapse of a specified amount of time.'"  State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983) (quoting State v. Smith, 131 N.J. Super. 354, 360 (App. Div. 1974)).  Legitimate delays, "however great," will not violate the defendant's right to a speedy trial if it does not specifically prejudice defendant's defense.  Doggett v. United States, 505 U.S. 647, 656 (1992).

As the PCR court noted, defendant's trial was delayed substantially by the appellate process and, upon remand, counsel asserted defendant's right to waive

15

a jury trial and proceed to a bench trial. In addition, as the court correctly determined, defendant failed to set forth any basis to find prejudice caused by the delay. Defendant did not have a meritorious basis to seek dismissal based on an alleged violation of his right to a speedy trial. "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." Worlock, 117 N.J. at 625.

Defendant's claim trial counsel failed to question Perkins about the advice he purportedly received from ELCC's legal counsel is not persuasive. Counsel did question Perkins about his decision not to remove defendant from the ELCC board. Questioning Perkins about the advice he allegedly received from ELCC's counsel would have been cumulative and irrelevant to the issues presented; whether the youth ministry was a youth serving organization in which defendant knowingly participated. Moreover, the case turned on whether defendant participated in the youth ministry, not whether he could "volunteer at the [c]hurch." Defendant failed to demonstrate counsel's examination of Perkins was deficient or that he was prejudiced by the failure to question Perkins about the advice he received from ELCC's counsel.

We are satisfied the PCR court correctly determined defendant's remaining arguments lack merit. Defendant failed to identify any evidence or

16

information counsel did not discover or legal issues counsel did not adequately research. Defendant also failed to identify the "inconsistencies" in the witnesses' statements counsel failed to elicit. Appellate counsel was not ineffective for failing to raise the speedy trial argument because it would not have constituted reversible error on direct appeal. See Echols, 199 N.J. at 361.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0925-23